THE STATE OF OHIO, APPELLANT, *v.* HILL, APPELLEE.

(No. 43477—Decided October 22, 1981.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellant.

*Mr. J. Frank Azarello,* for appellee.

JACKSON, C.J. The appellee was indicted for carrying a concealed weapon, a violation of R.C. 2923.12. The trial court granted the appellee's motion to suppress the gun, which was the sole evidence of the crime. The state of Ohio is appealing herein the granting of the motion to suppress.

Four persons testified at the suppression hearing. Patrolman Terry Hageman, the arresting officer, was the sole witness for the state. Officer Hageman stated that at 2:07 a.m. on the morning of August 19, 1980, he and his partner received a radio assignment to go to East 104th and Union Avenue, because a large group of people was gathering with guns. As police approached the intersection, they saw a large group of people gathering near the corner. The crowd began to disperse as they drove up. Appellee Freddie Hill and another man began walking away from the crowd. Officer Hageman stated that when he and his partner got out of the car, he noticed a bulge in the appellee's right rear pocket. He was about ten feet away from appellee when he saw the bulge. He and his partner stopped and frisked the appellee and the other man, and found a gun in the appellee's pocket. Patrolman Hageman denied frisking any of the other persons standing on the corner.

The prosecution presented no evi-

dence regarding the source of the radio assignment received by Officer Hageman.

Three witnesses testified on behalf of the appellee. Freddie Hill, Sr., the appellee's father, is either the owner or the manager of a bar located at 104th and Union. He testified that he left the bar at about 10:00 p.m. the night of the arrest, because he was ill; that he telephoned his son, the appellee, and asked him to close the bar and to bring the day's receipts and the gun kept behind the bar to his (the father's) house; that when his son was arrested, he returned to 104th and Union and explained to the police that the gun belonged to him, was registered, and was being used by his son at his request and for a lawful purpose.

The barmaid, Mammy Jackson, and George Hill, the brother of the appellee, corroborated the testimony of Freddie Hill, Sr.; they confirmed that appellee was carrying his father's gun, at his father's request, when he was arrested. They also corroborated the essential particulars of Patrolman Hageman's testimony, namely, that there was a large crowd gathering on the corner of East 104th and Union, and that the appellee and his brother were walking away from the crowd when they were stopped and searched by the police. They further explained that after closing the bar, the appellee and his brother walked Mammy Jackson to her car. George Hill testified that he and the appellee then crossed the street and joined the crowd on the corner; when the police arrived, the crowd dispersed, and the two brothers began walking toward Freddie's car. The testimony of Patrolman Hageman and the defense witnesses differ in only one important respect: Patrolman Hageman stated that only the appellee and the man with him were searched; Mammy Jackson said that the appellee was the first person searched, but that the police searched other people as well; and George Hill testified that he and three other men were the first people who were searched, and that the police searched

seven or eight persons in total. He said, "they searched everybody that was out there," and "they [the police] was just snatching everybody out of the crowd and telling them, everybody, to get up against the wall."

The trial court granted the motion to suppress on the ground that "there was no probable cause for a search."

The initial action taken by Patrolman Hageman was an investigative stop and frisk of the appellee. When the gun was discovered as the result of the frisk, Officer Hageman unquestionably had probable cause to arrest the appellee; therefore, the only issue for decision is whether the initial stop and frisk of the appellee was consistent with the appellee's right to freedom from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

The United States Supreme Court has held that the police may briefly detain an individual for purposes of investigation whenever they reasonably suspect that the individual is involved in criminal activity. *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 383]. A police officer is also entitled to conduct a pat-down search for weapons, when the officer is "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others * * *." 392 U.S. at 24.

The foregoing standard does not depend upon the subjective good faith of the police officer. 392 U.S. at 22. The court held that the policeman "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion" on the privacy of the citizen under investigation. 392 U.S. at 21. In *Terry*, the police officer had observed the defendant and another man walk back and forth past a store numerous times, look in the window, and confer on the corner of the street. 392 U.S. at 6.

The court held that the police officer reasonably suspected the defendant of planning to hold up the store. 392 U.S. at 23.

In *Adams* v. *Williams* (1972), 407 U.S. 143, the court held that a policeman's "reasonable suspicion" of criminal activity, justifying an investigative stop and frisk, need not be based upon the officer's personal observation. An unidentified informant, known to the police officer as reliable, told the policeman that an individual in a nearby car was carrying narcotics and had a gun at his waist. 407 U.S. at 144-145. The policeman approached the suspect, reached in the car window, and took the gun from his waistband. 407 U.S. at 145. A subsequent search of the defendant's person and automobile uncovered narcotics and other weapons. 407 U.S. at 145. The court held:

"* * * [W]e believe that Sgt. Connolly acted justifiably in responding to his informant's tip. The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint had Sgt. Connolly's investigation proved the tip incorrect. Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, see, *e.g., Spinelli* v. *United States,* 393 U.S. 410, (1969); *Aguilar* v. *Texas,* 378 U.S. 108, (1964), the information carried enough indicia of reliability to justify the officer's forcible stop of Williams.

"In reaching this conclusion, we reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations — for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime — the subtleties of the hearsay rule should not thwart an appropriate police response." 407 U.S. at 146-147 (footnote omitted).

American courts are currently engaged in an intense debate concerning the admissibility of evidence seized following investigative stops prompted by radio assignments. In no case has a court ruled that the police may not act on the basis of a lawful directive from a fellow officer; the issue is, instead, whether or not the state is obliged, at a hearing to suppress evidence, to prove the factual basis for the radio call. In *United States* v. *Robinson* (C.A. 9, 1976), 536 F. 2d 1298, the court reversed the defendant's conviction for interstate transportation of a stolen automobile on the ground that the trial court should have excluded the evidence seized when the defendant was stopped by the police. The arresting officer in that case stopped the defendant's automobile in response to a police bulletin identifying the car by model and license number and advising that it was possibly stolen. The source of the information giving rise to the police bulletin was not disclosed at trial. The court held that, while it was reasonable for the arresting officer to stop the vehicle and question the driver, it was incumbent upon the state to prove that the dispatcher ordering the investigative stop had a "reasonable suspicion" that the car was stolen:

"We recognize that effective law en-

forcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information. The fact that an officer does not have to have personal knowledge of the evidence supplying good cause for a stop before he can obey a direction to detain a person or a vehicle does not mean that the Government need not produce evidence at trial showing good cause to legitimate the detention when the legality of the stop is challenged. If the dispatcher himself had had founded suspicion, or if he had relied on information from a reliable informant who supplied him with adequate facts to establish founded suspicion, the dispatcher could properly have delegated the stopping function to Officer Holland. But if the dispatcher did not have such cause, he could not create justification simply by relaying a direction to a fellow officer to make the stop." 536 F. 2d at 1299-1300.

Judge Smith, dissenting in *Robinson,* was of the opinion that any police officer who makes an investigative stop in response to a radio call is *a fortiori* acting reasonably, and is therefore acting within the constitutional standard established by *Terry* v. *Ohio* and *Adams* v. *Williams, supra.* Judge Smith, in essence, treats the radio call as a tip from a reliable source, which, under *Adams* v. *Williams,* may constitutionally serve as the basis for an investigative stop. This was the approach taken by the Federal Court of Appeals for the Seventh Circuit in *United States* v. *Hernandez* (C.A. 7, 1973), 486 F. 2d 614. In that case the police stopped a van containing unregistered immigrants from Mexico after receiving the following radio call:

"REPORT CAR AT LINCOLN IL-LEGAL ENTRIES ALIENS WHITE FORD SPORTVAN BDL 70 MODEL SEVERAL MEX. SUBJECT IN IT COVERED UP BY BLANKET 71 IL PF LEFT LINCOLN 10 10P DRIVER ASK DISTANCE JOLET."

The court found that this radio assignment contained "internal evidence of reliability," and therefore supported the investigative stop:

"The internal evidence of reliability provided by the details in the police bulletin (which were corroborated by the observations of the arresting officer before he stopped defendant's vehicle) outweigh, in our opinion, the risk of acting on the basis of information that might have been supplied by an anonymous informant. We mention this point because, particularly when the case is one in which there is a risk that suspicion of criminal behavior may be prompted by nothing more than an ethnic identification, it is essential that even an investigative stop be supported by 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry* v. *Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed. 2d 889 [44 O.O.2d 383]." 486 F. 2d at 617 (footnote 2).

The Seventh Circuit affirmed the defendant's conviction for unlawful transportation of aliens.

The Seventh Circuit, in *Hernandez,* looks only to the actions of the arresting officer, to determine whether the stop was reasonable; the Ninth Circuit, in *Robinson,* has chosen to consider whether the stop was reasonable in light of the information in the possession of the policeman who ordered the investigative stop.

A similar question faced the Supreme Court in *Whiteley* v. *Warden* (1971), 401 U.S. 560 [58 O.O.2d 434]. A Wyoming sheriff, after receiving a tip from an unnamed informant, issued an arrest warrant for the defendant. The warrant was broadcast with a description of the defendant's car. A police officer in another part of the state stopped and arrested the defendant. The court found that the evidence, seized as a result of the arrest, should have been suppressed because the

sheriff responsible for the broadcast lacked probable cause to issue the warrant. The court held:

"The State, however, offers one further argument in support of the legality of the arrest and search: the Laramie police relied on the radio bulletin in making the arrest, and not on Sheriff Ogburn's unnamed informant. Clearly, it is said, they had probable cause for believing that the passengers in the car were the men described in the bulletin, and, in acting on the bulletin, they reasonably assumed that whoever authorized the bulletin had probable cause to direct Whiteley's and Daley's arrest. To prevent arresting officers from acting on the assumption that fellow officers who call upon them to make an arrest have probable cause for believing the arrestees are perpetrators of a crime would, it is argued, unduly hamper law enforcement.

"We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.

"In sum, the complaint on which the warrant issued here clearly could not support a finding of probable cause by the issuing magistrate. The arresting officer was not himself possessed of any factual data tending to corroborate the informer's tip that Daley and Whiteley committed the crime. Therefore, petitioner's arrest violated his constitutional rights under the Fourth and Fourteenth Amendments; the evidence secured as an incident thereto should have been excluded from his trial. *Mapp* v. *Ohio,* 367 U.S.

643 [16 O.O.2d 384] (1961)." 401 U.S. at 568-569.

It is our considered opinion that where an investigative stop is made in response to a police bulletin, the burden is upon the state to show the factual basis for the stop, at a hearing on a motion to suppress. In the case at bar, the information leading to the issuance of the police bulletin was not disclosed at trial. We decline to find that the content of a radio assignment, because of the specific nature of the information or the fact that it concerns an ongoing crime, can alone be used to prove that the action of the police was based upon information of sufficient reliability. Nor do we find that there was uncontradicted evidence showing that Officer Hageman had an independent factual basis for stopping and frisking the appellee. The fact that appellee was part of the crowd that dispersed when the police arrived cannot justify a forcible stop. Cf. *Watkins* v. *State* (1980), 288 Md. 597, 420 A. 2d 270, 277 (Cole, J., dissenting). Furthermore, the trial court was not obliged to believe Officer Hageman's testimony that appellee was stopped because of a bulge in his pocket, for the credibility of the witnesses is primarily for the trier of fact to determine. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366]. The court may have chosen to believe the defense witnesses, that several men in the group were indiscriminately searched. We are persuaded that the trial court did not commit reversible error in granting the motion to suppress.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

DAY and MCMONAGLE, JJ., concur.

MCMONAGLE, J., retired, of the Court of Common Pleas of Cuyahoga County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.