STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ROBERT SPENCER, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 16, 1987—Decided October 30, 1987.

Before Judges KING, GAULKIN and GRUCCIO.

*Susan W. Sciacca,* Assistant Prosecutor, argued the cause for appellant (*Larry J. McClure,* Bergen County Prosecutor, attorney; *Ulrike M. Ziebarth,* Assistant Prosecutor, on the brief).

*Kevin G. Roe* argued the cause for respondent (*Lucianna, Bierman & Stillman,* P.A., attorneys).

The opinion of the court was delivered by

GAULKIN, J.A.D.

Defendant, charged with two counts of armed robbery, moved prior to trial to suppress evidence seized in a warrantless search of a car he was driving. Following an evidentiary hearing the Law Division judge granted the motion, finding that defendant had been unlawfully stopped in violation of *Delaware v. Prouse,* 440 *U.S.* 648, 99 *S.Ct.* 1391, 59 *L.Ed.*2d 660 (1979). By leave granted (*R.* 2:2–4), the State appeals.

Defendant was driving alone in his mother's 1970 Chevrolet Nova shortly after midnight on November 20, 1985, when he was stopped by New Milford Police Officer Frank Papapietro.

The officer testified that he stopped the automobile because of a report "exchanged" within the New Milford police department "that the driver of this vehicle could have a suspended driver's license." He had been told the vehicle plate number, that the car was a brown or green Chevrolet Nova and that "the operator may be Mr. Spencer."

As Papapietro was traveling north on River Road, he passed a car going south. Papapietro was "able to recognize" the car as a Chevrolet Nova and that the driver was a "white Caucasian," but he could not see the license plate. He made a U-turn and started after the car; it took some time for him "to get close enough to the vehicle to stop it." Just before the stop, Papapietro was able to see the license plate and, although he "could only remember part of" the plate number previously given to him, that part corresponded to the plate on the car.

When stopped, defendant was unable to produce the car registration, a driver's license or any other identification. In response to a radioed request for a license check, Papapietro was told that defendant's license was suspended. He conducted a pat-down and palpated an object in defendant's sock which he found to be a hypodermic needle and syringe. Papapietro thereupon arrested defendant and took him to headquarters. The car was impounded, taken to headquarters and "inventoried." In the trunk Papapietro found a machine gun and clip.

The motion judge apparently credited Papapietro's testimony, but concluded that the stop was "arbitrary" and conducted for "absolutely no reason whatsoever except the group of 'perhaps' coincident circumstances, a Nova, a white male." Invoking *Delaware v. Prouse*, the judge held that Papapietro had made "a random stop which is violative of the constitutional right of privacy."

*Delaware v. Prouse* holds that stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment "except in those situations in which there is

at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law...." 440 *U.S.* at 663, 99 *S.Ct.* at 1401. Those strictures are imposed in order to limit what would otherwise be "the unbridled discretion of law enforcement officials" (*id.* at 661, 99 *S.Ct.* at 1400) to intrude "upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches...." *Id.* (citing *Terry v. Ohio,* 392 *U.S.* 1, 22, 88 *S.Ct.* 1868, 1880, 20 *L.Ed.*2d 889 (1968)).

The State's argument in support of the stop is uncomplicated: Papapietro did not exercise "unbridled discretion," but acted on the basis of specific information which narrowly focused on the car defendant was driving. Since he had been informed by his department that the driver of a particularly described vehicle might not be licensed, Papapietro had sufficient articulable and reasonable suspicion to stop the vehicle when he came upon it.

The argument is flawed. While it may be fair to conclude that Papapietro did not make a "random" stop, the record discloses nothing about the source, nature, details or reliability of the information "exchanged" within the New Milford police department. Thus there is no way to determine whether the police had an articulable and reasonable suspicion to stop the vehicle. The mere fact that Papapietro acted on a report circulated within his department does not mean that he had an articulable and reasonable suspicion. If the information in the hands of the police was mere hunch or rumor or was otherwise insufficient to support an articulable and reasonable suspicion, that information would not justify a stop even though Papapietro relied on it in good faith to stop the car. The reliability of the information is not enhanced simply because it is communicated through police channels.

We find that to be the teaching of *United States v. Hensley,* 469 *U.S.* 221, 105 *S.Ct.* 675, 83 *L.Ed.*2d 604 (1985), in which an automobile stop was upheld on the basis of a "wanted flyer"

which described defendant as suspected of a robbery. The Supreme Court ruled that the officer making the stop did not need to have personal knowledge of the underlying facts, but was entitled to act "in objective reliance on the flyer or bulletin." *Id.* at 233, 105 *S.Ct.* at 683. However, the Court continued, a stop made in reliance on such a flyer violates the Fourth Amendment unless "the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop." *Id.* That holding validates a substantial body of earlier precedent. *See, e.g., Whiteley v. Warden,* 401 *U.S.* 560, 91 *S.Ct.* 1031, 28 *L.Ed.*2d 306 (1971); *United States v. Mobley,* 699 *F.*2d 172 (4th Cir.1983); *United States v. Robinson,* 536 *F.*2d 1298 (9th Cir. 1976); *People v. Hazelhurst,* 662 *P.*2d 1081 (Colo.1983); *State v. Hill,* 3 *Ohio App.*3d 10, 443 *N.E.*2d 198 (1981); *People v. Brown,* 88 *Ill.App.*3d 514, 43 *Ill.Dec.* 505, 410 *N.E.*2d 505 (1980); *see generally,* 3 W.R. LaFave, *Search and Seizure* § 9.3(f) at 487–480 (2d ed. 1987).

We do not suggest that a police officer or department must independently verify or trace to its original source the information upon which an automobile stop is premised. Police officers can and must rely on information of many kinds and sources. But the State must show an articulable and reasonable suspicion for an automobile stop. Here the State did not identify or describe the substance or any details of the information "exchanged" within the New Milford department. Thus the record does not permit any determination whether Papapietro's stop of defendant was supported by articulable and reasonable suspicion.

The nature and sufficiency of the information in the possession of the New Milford department were not addressed by the motion judge or by counsel either in the trial court or on the appeal. We choose not to determine the propriety of the stop on the basis of a record and briefs which do not speak to the critical facts. We therefore vacate the suppression order and remand the matter to the Law Division to permit the parties to supplement the record in light of this opinion. The motion

judge shall thereupon reconsider and redetermine the lawfulness of the stop and the ensuing search and seizure.[1]  *See generally, State v. Davis,* 104 *N.J.* 490 (1986);  *State v. Kuhn,* 213 *N.J.Super.* 275 (App.Div.1986).

Reversed and remanded.  We do not retain jurisdiction.

---

[1] In order to avoid prolonging and fractioning the litigation, we direct that, should the motion judge again find the stop unlawful, he shall nevertheless determine whether the search and seizure would have been proper had the stop been lawful.