### State v. Johnson
*[Cite as 3 AOA 173]*

*Case No. 58344*
*Cuyahoga County, (8th)*
*Decided May 3, 1990*

*John T. Corrigan, Cuyahoga County Prosecuting Attorney, Robert F. Coury, Assistant Prosecuting Attorney, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113, for Plaintiff-Appellant.*

*Hyman Friedman, Cuyahoga County Public Defender, By Richard Gedeon, Assistant Public Defender, The Marion Bldg., Room 307, 1276 West Third Street, Cleveland, Ohio 44113-1569, for Defendant-Appellee.*

*Per Curiam.*

Pursuant to Crim. R. 12(J) the state appeals from the trial court's order granting the defendant's motion to suppress evidence seized at the time of his arrest. We overrule the state's single assignment of error which challenges the trial court's order.

The grand jury indicted the defendant for (1) two counts of possessing cocaine in an amount equal to or exceeding three times the bulk amount (see R.C. 2925.03(A) (6)), (2) receiving stolen property (see R.C. 2913.51), and (3) possession of criminal tools (see R.C. 2923.24). Prior to trial the defendant moved to suppress all evidence seized at the time of his arrest. At the hearing on the motion the state presented as its sole witness the police patrolman who detained the defendant and searched the automobile which the defendant occupied at the time of the investigative stop.

The patrolman testified that at approximately 1:30 a.m. on May 14, 1989, he received a radio report of an armed robbery of a pizza delivery person. The radio dispatcher reported that the suspects, two black males of medium build wearing dark clothes, were last observed fleeing the robbery scene on foot. The dispatcher reported that the victim had observed that at least one of the men carried a gun.

Approximately ten minutes after the initial report, the witness received a radioed request to assist another patrol officer in investigating possible robbery suspects at a location one-quarter of a mile from the robbery scene. When he arrived at this location he observed two automobiles parked in a residential driveway approximately twenty-five feet apart. One black male sat in the automobile closest to the house. Three black males, two of whom matched the general description of the robbery suspects, occupied the automobile nearest the street.

The patrolman testified that he and the other officer who had requested assistance approached the vehicle containing the three men and questioned them. The officer testified that the defendant sat in the front of the vehicle on the driver's side. Momentarily, other officers arrived and approached the second vehicle. One of these officers, as he neared the automobile containing the single man, yelled "We have a gun." Thereupon, the witness ordered the three

men to leave their automobile. The police then detained and searched the three men as they stood to the rear of the car, five to eight feet from the forward passenger compartment.

The patrolman testified that, in order to ensure the safety of police officers, he searched the automobile for weapons. While he conducted this search, he observed a pager over the driver's side visor. In the glove compartment he found a bag which contained a small hard object. The patrolman testified that generally he was unaware of weapons the size of this object but asserted his belief that weapons can be very small in nature. Accordingly, he opened the bag and discovered a film canister and a clear plastic bag containing a white powdery substance, which upon later analysis, the police identified as cocaine. The officer confiscated this evidence.

The patrolman stated that several minutes later the pizza deliveryman who had been robbed arrived at the scene. He testified that the police released all of the men, except one of the passengers in defendant's automobile who had an outstanding traffic warrant, since the deliveryman was unable to identify any of them as having robbed him. The patrolman stated later that morning he ran a computer check on the license number of the vehicle occupied by the defendant. He discovered that the owner of the vehicle had reported it stolen.

"The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo* (1988), 37 Ohio St. 3d 171, paragraph one of the syllabus. Probable cause to arrest is not required for a brief stop. *Terry* v. *Ohio* (1968), 392 U.S. 1, 21. However, the police officer must be able to point to specific, articulable facts which would lead a reasonable person to suspect criminal activity is afoot. *State* v. *Freeman* (1980), 64 Ohio St. 2d 291, 294.

Here, the state failed to establish the reasonableness of the initial stop and detention of the defendant. The state may not rely upon the information contained in the police radio report of the armed robbery as a justifying circumstance since the state failed to establish the underlying factual basis for that report. See *State* v. *Hill* (1981), 3 Ohio App. 3d 10, 14; *State* v. *Smartt* (Mar. 9, 1989), Cuyahoga App. No. 55946, unreported. Accordingly, the reasonableness of the investigative stop by the police depends upon whether the detaining officers independently observed circumstances reasonably indicating criminal behavior at the scene of the detention.

See *Strongsville* v. *Chriss* (May 18, 1989), Cuyahoga App. No. 54019, unreported.

In this case, the only circumstance indicating criminal behavior at the scene prior to the defendant's detention was the discovery of a gun in the automobile in front of the vehicle occupied by the defendant. However, this circumstance alone would not justify the investigative stop of the defendant and the protective search of the defendant's vehicle. The patrolman specifically testified that prior to approaching the defendant he observed no communication between the two vehicles nor reported any other discernible connection between the occupants of the two vehicles. Further, there is no evidence in the record that these events occurred in a high-crime area which might warrant a broadening of the scope of an investigative stop. Moreover, the patrolman testified that he questioned the defendant and his passengers prior to the discovery of the gun in the other vehicle without observing any suspicious activity.

Assuming *arguendo* that the police properly detained the defendant initially, the patrolman exceeded the scope of a permissible protective search. Where police conduct a proper investigative detention of an individual, an officer may conduct a limited search for weapons of that individual and those areas that the defendant might have immediate access. *State* v. *Bobo, supra,* at 180. Here, the patrolman exceeded the bounds of a permissible search by searching the vehicle since other officers had secured the defendant and his companions five to eight feet from the vehicle, precluding their access to any concealed weapon. In addition, the patrolman exceeded the bounds of a protective search by opening the bag found in the glove compartment since it was reasonably clear that the bag contained no weapon. A search for concealed weapons in conjunction with an investigative stop must be limited in scope to the protective purpose. *Id.*

Accordingly, we overrule the state's single assignment of error and affirm the trial court's order granting the defendant's motion to suppress.

*Judgment affirmed.*

J. F. CORRIGAN, P.J., DYKE, J., and CORRIGAN, J. concur.