OPINION
Appellant Jeffrey Lanning appeals the decision of the Licking County Municipal Court that denied his motion to suppress. The following facts give rise to this appeal. On the evening of November 30, 1998, appellant almost struck Deputy Chad Carson's cruiser while Deputy Carson was responding to a domestic violence/burglary call. Deputy Carson testified that he was traveling northbound on Dayton Road and as he approached a dark-colored, small vehicle, traveling southbound, the dark-colored vehicle went left of center into his lane of travel. Deputy Carson drove into a parking lot to avoid a collision. Because Deputy Carson was responding to a call, he radioed Deputy Kyle Boerstler, another deputy in the vicinity, to stop the vehicle. Deputy Carson described the vehicle as dark grey and informed Deputy Boerstler that the subject had a beard and was wearing a hat. After receiving this information from Deputy Carson, Deputy Boerstler observed three vehicles, one of which matched the description given by Deputy Carson. Deputy Boerstler followed appellant's vehicle for approximately two miles. Deputy Boerstler observed appellant's vehicle cross over the right line on one occasion. Appellant eventually pulled into a driveway. At that point, Deputy Boerstler turned around, activated his lights and parked his cruiser blocking the driveway. As Deputy Boerstler approached appellant's vehicle, he observed appellant laying down in the front seat of the vehicle and appellant was not wearing a hat nor did he have a beard. Deputy Boerstler asked appellant for his license and registration, ran the identification and discovered no outstanding warrants for his arrest. Upon returning these documents to appellant, Deputy Boerstler asked appellant if he had been drinking. Appellant admitted to having a couple of drinks. Thereafter, Deputy Boerstler radioed Deputy Allen Thomas in order to administer field sobriety tests. Deputy Thomas testified that when he arrived and began talking with appellant he immediately noticed a strong odor of alcohol. Deputy Thomas administered four field sobriety tests. Appellant failed all four tests. Appellant was cited for driving under the influence of alcohol and failure to drive within the marked lanes. At his arraignment, on December 16, 1998, appellant pled not guilty. On January 6, 1999, appellant filed a motion to suppress on the basis that the arresting officer lacked a reasonable, articulable suspicion to stop appellant's vehicle. Following a hearing, the trial court overruled appellant's motion on February 22, 1999. On April 14, 1999, appellant pled no contest to both charges and the trial court sentenced him accordingly. Appellant timely filed a notice of appeal and sets forth the following assignment of error for our consideration:
I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE ARRESTING OFFICER LACKED A REASONABLE, ARTICULABLE SUSPICION TO STOP AND DETAIN THE APPELLANT.
 I
Appellant contends, in his sole assignment of error, that the trial court erred in denying his motion to suppress because the arresting officer lacked a reasonable, articulable suspicion to stop and detain him. We disagree. In denying appellant's motion to suppress, the trial court determined Deputy Boerstler had a reasonable, articulable suspicion to stop appellant because "* * * [he] believed that it was the same individual that he had been warned about by Deputy Carson; that the individual was the same individual he observed going off of the roadway and making a wide right-hand turn onto Garfield; and also was the individual who was attempting to hide himself from the officer." Judgment Entry, Feb. 22, 1999, at 2. Appellant challenges the trial court's findings of fact. In reviewing this type of a claim, we must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; State v. Guysinger (1993),86 Ohio App.3d 592. It is well-settled law in Ohio that reasonable and articulable suspicion is required for an officer to make a warrantless stop. Terry v. Ohio (1968), 392 U.S. 1. "Probable cause to arrest a suspect for driving under the influence is not necessary in order to stop a vehicle for suspected criminal activity." State v. Brandenburg (1987), 41 Ohio App.3d 109, 110. The reasonable and articulable standard is a lesser standard and not synonymous with the probable cause standard needed to place a person under arrest. Delaware v. Prouse (1979), 440 U.S. 648. We find Deputy Boerstler had a reasonable, articulable suspicion to stop appellant under the fellow officers rule. This rule permits a police officer to stop a vehicle based upon reasonable suspicion of criminal activity through sources other than his own observations, including radio broadcasts. State v. Good (1987),37 Ohio App.3d 174; State v. Holmes (1985), 28 Ohio App.3d 12; and State v. Hill (1981), 3 Ohio App.3d 10. Under this rule, we must determine whether the broadcasting officer had reasonable suspicion to conduct the stop himself. Such stops are permissible even though the officer that effects the stop had no knowledge of the factors that develop reasonable suspicion. U.S. v. Hensley (1985), 469 U.S. 221, 232. The testimony presented by Deputy Carson, at the suppression hearing, establishes that he had a reasonable, articulable suspicion to stop appellant himself. A. I was en route on a call. I was northbound on Dayton Road, just north of State Route Sixteen. As I approached Swans Road, the intersection of Swans Road and Dayton Road, I observed a dark-colored smaller vehicle coming southbound on Dayton Road across the railroad tracks. As I approached the vehicle, the vehicle started going left of, left of center for him, into my lane of travel. At that time I had to take evasive action and drove into a parking lot to keep from getting hit head-on.
Q. The, (sic) oncoming vehicle was far enough into your lane that you had to get that far out of the road?
A. Yes, it was three-fourths of the way into my lane.
Q. What did you do next?
A. At that time, due to the fact that I was going on a, the call that commanded immediate response, I had observed Deputy Boerstler sitting at the intersection of Dayton Road and Sixteen. I immediately radioed to him the vehicle description and the direction of travel of the vehicle and requested that he stop the vehicle and I.D. the subject and see if there was a problem, why he would have come left of center. Tr. Suppression Hrng, Feb. 10, 1999, at 5-6.
Clearly, based on Deputy Carson's testimony, he had a reasonable, articulable suspicion to stop appellant and would have stopped appellant had he not been responding to a call that required immediate attention. In applying the fellow officers rule, it is not necessary to address the conduct Deputy Boerstler observed, while following appellant approximately two miles, before he stopped him. Under this rule, Deputy Boerstler, without observing any other conduct by appellant, had a reasonable, articulable suspicion to stop appellant. Appellant also challenges the prolonged detention. He claims that once Deputy Boerstler checked his driver's license and registration, Deputy Boerstler should have cited him for failing to drive in marked lanes and released him. Appellant claims Deputy Boerstler had no reason to believe he had been drinking and therefore, any further detention was improper. A review of the testimony presented at the suppression hearing establishes Deputy Boerstler did have reason to believe appellant had been drinking. First, Deputy Boerstler knew appellant almost hit Deputy Carson's cruiser head-on and forced Deputy Carson off of the road to avoid a collision. Second, Deputy Boerstler testified that when he returned appellant's driver's license and registration to him, he asked appellant if he had been drinking. Id. at 15-16. Appellant informed Deputy Boerstler that he had had "a couple." Id. at 16. In State v. Robinette (1997),80 Ohio St.3d 234, the Ohio Supreme Court held that: [w]hen a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure. State v. Robinette (1995), 73 Ohio St.3d 650,653 N.E.2d 695, paragraph one of the syllabus, modified.
Deputy Boerstler admitted, at the suppression hearing, that he did not smell alcohol on appellant's breath. Tr. Suppression Hrng., Feb. 10, 1999, at 16. However, we find the continued detention of appellant's vehicle was justified. The articulable facts giving justification to the continued detention included appellant's driving, the fact that appellant appeared to be hiding in the front seat of his vehicle when Deputy Boerstler approached, appellant's level of nervousness and appellant's own admission that he had had "a couple." Id. at 5-6, 14, 16. Pursuant to Robinette, Deputy Boerstler properly detained appellant until Deputy Allen Thomas arrived on the scene to conduct the field sobriety tests. We find the trial court did not err when it denied appellant's motion to suppress. The findings of fact, made by the trial court in denying appellant's motion, are not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.
For the foregoing reasons, the judgment of the Licking County Municipal Court, Licking County, Ohio, is hereby affirmed.
By: Wise, P.J. Gwin, J., and Hoffman, J., concur.