OPINION
{¶ 1} Appellant John Lott appeals the decision of the Delaware Municipal Court that denied a motion to suppress. The following facts give rise to this appeal.
 {¶ 2} In the early morning hours of May 2, 2002, the Delaware Police Department received an anonymous telephone call. The caller stated that appellant was at Kintz's Bar, was intoxicated, should not be driving and was likely to drive home. The dispatcher sent Officers Christopher Cox and Brenda Wadsworth, of the Delaware Police Department, to Kintz's Bar in order to further investigate the anonymous tip.
 {¶ 3} Upon entering Kintz's Bar, Officer Cox recognized appellant sitting at the bar. Appellant was talking on his cellular telephone when Officer Cox approached him. Officer Cox informed appellant that he would like to speak to him. Appellant excused himself from the telephone conversation and turned his attention to Officer Cox. Officer Cox informed appellant that the police department had received a call about his drinking and that he did not want appellant to drive his vehicle. Appellant nodded his head in response to Officer Cox's statements and resumed his telephone conversation. Officer Cox did not observe appellant drinking any alcoholic beverages, but did notice that appellant's eyes were bloodshot and glassy. Following this conversation with appellant, the officers left the bar.
 {¶ 4} Approximately five minutes after she left the bar, Officer Wadsworth returned to the area of Kintz's Bar and observed appellant walking towards his vehicle. Appellant got into his vehicle and began driving. Officer Wadsworth followed appellant for approximately two blocks. Although Officer Wadsworth did not observe any erratic driving or traffic violations, she activated her lights and stopped appellant. Officer Wadsworth administered various field sobriety tests to appellant and based upon his performance of these tests, placed appellant under arrest for driving under the influence.
 {¶ 5} Appellant appeared, at his arraignment, on May 3, 2002, and entered a plea of not guilty. Thereafter, appellant's defense counsel filed a motion to suppress on his behalf. The trial court conducted a hearing on appellant's motion and denied said motion on August 14, 2002. On August 26, 2002, appellant filed a motion to continue the jury trial and asked the trial court to re-hear his motion to suppress. Appellant based this request upon the fact that following the first hearing on his motion to suppress, appellant received an audiotape of the telephone call from the anonymous citizen and the audiotape established that the testimony relied upon by the court in the original suppression hearing was faulty. Based upon this audiotape, the trial court reconsidered appellant's motion to suppress and again denied appellant's motion.
 {¶ 6} Subsequently, appellant entered a plea of no contest and the trial court sentenced him accordingly. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 7} "I. The trial court erred in overruling appellant's motion to suppress evidence, based upon the fact that the investigatory stop was not based upon reasonable suspicion or specific and articulable facts, and the trial court thereby violated appellant's rights under the fourth
and fourteenth Amendments to the United States Constitution and ArticleI, Section 14 of the Ohio Constitution.
 {¶ 8} "II. The trial court erred in denying appellant's motion to suppress the results of field sobriety tests based upon the arresting officer's failure to administer field sobriety tests in strict compliance with standardized testing procedures."
 I {¶ 9} In his First Assignment of Error, appellant maintains the trial court erred when it denied his motion to suppress because the investigatory stop of his vehicle was not based upon a reasonable articulable suspicion. We disagree.
 {¶ 10} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485; Statev. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37.
 {¶ 11} Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of a claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor
(1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, 696, as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal.
 {¶ 12} In the case sub judice, appellant challenges the trial court's finding that the anonymous caller was reliable. Under this type of a challenge, we must determine whether the trial court's finding as to the reliability of the anonymous caller is against the manifest weight of the evidence.
 {¶ 13} In its judgment entry, the trial court determined the anonymous caller provided a reliable tip which was corroborated by Officer Cox when he initially spoke to appellant at Kintz's Bar. Judgment Entry, Sept. 5, 2002, at 4. Appellant contends the information provided by the anonymous caller was not corroborated by Officer Cox. Instead, the only information corroborated by Officer Cox was appellant's presence at the bar. Further, appellant maintains the investigatory stop of his vehicle was unlawful because prior to stopping him, Officer Wadsworth observed no erratic driving or driving violations and the only reason the officer stopped him was because Officer Cox previously told him not to drive.
 {¶ 14} In Maumee v. Weisner, 87 Ohio St.3d 295, 298-299,1999-Ohio-68, the Ohio Supreme Court explained that where law enforcement officers rely solely upon an informant's tip before effectuating a stop, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. It must be determined whether the tip itself is sufficiently reliable in order to justify the investigative stop. Id. at 299. Factors to be considered are the informant's veracity, reliability and basis of knowledge. Id.
 {¶ 15} The courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. Id. at 300. The "reasonable suspicion" needed to initiate a Terry stop is a less demanding standard than probable cause. Therefore, reasonable suspicion "* * * can arise from information that is less reliable than that required to show probable cause." Alabama v. White (1990), 496 U.S. 325,330. Thus, a tip from a less reliable informant can provide a sufficient basis for a Terry stop if the tip can be corroborated by independent police investigation. Id. at 329.
 {¶ 16} In the matter currently under consideration, we must determine whether independent police investigation, based upon the anonymous caller's tip, provided a sufficient basis for the stop of appellant's vehicle. Officers Cox and Wadsworth found appellant at Kintz's Bar, where the anonymous caller indicated appellant would be found. Officer Cox approached appellant in order to talk to him. At the suppression hearing, Officer Cox testified that when he talked to appellant, he noticed his eyes were bloodshot and glassy. Tr. Suppression Hrng., Aug. 14, 2002, at 6, 7, 10. Officer Cox also testified that appellant's speech was slurred. Id. at 6. Pursuant to Officer Cox's testimony about his conversation with appellant, we find the anonymous tip was corroborated by Officer Cox's encounter with appellant.
 {¶ 17} Officer Wadsworth testified that she did not see appellant drinking any alcoholic beverages. Id. at 27. Further, Officer Wadsworth testified that her decision to stop appellant was based upon Officer Cox's observations of appellant when he spoke to him at Kintz's Bar. Officer Cox informed Officer Wadsworth that appellant was intoxicated. Id. at 13, 28. Officer Wadsworth admitted that she did not stop appellant based upon any observations she made of appellant at Kintz's Bar or any observations of traffic violations once appellant began driving. Id. at 26, 28.
 {¶ 18} Clearly, when Officer Cox talked to appellant, although he believed appellant to be intoxicated, he could not detain appellant or place appellant under arrest because appellant had not yet committed a criminal offense. However, the record indicates Officer Cox shared his observations of appellant with Officer Wadsworth. Id. at 13, 28. Based upon this shared information, we conclude Officer Wadsworth had reasonable, articulable suspicion when she stopped appellant under the fellow officers rule.
 {¶ 19} This rule permits a police officer to stop a vehicle based upon reasonable suspicion of criminal activity through sources other than his or her own observations, including radio broadcasts. State v.Lanning (Sept. 16, 1999), Licking App. No. 99 CA 38, at 2, citing Statev. Good (1987), 37 Ohio App.3d 174 and State v. Hill (1981),3 Ohio App.3d 10, 12. Under this rule, we must determine whether the broadcasting officer had reasonable suspicion to conduct the stop himself. Lanning at 2. Such stops are permissible even though the officer that effects the stop had no knowledge of the factors that develop reasonable suspicion. Id., citing U.S. v. Hensley (1985), 469 U.S. 221,232.
 {¶ 20} We conclude Officer Wadsworth's stop of appellant's vehicle was based upon reasonable articulable suspicion under the fellow officers rule. After talking to appellant, had Officer Cox observed appellant driving, he could have stopped appellant's vehicle, even if he did not observe any erratic driving or traffic violations, based upon the observations he made while talking to appellant at Kintz's Bar. "An officer does not have to observe poor driving performance in order to effect an arrest for driving under the influence of alcohol if all the facts and circumstances lead to the conclusion that the driver was impaired." State v. Hoffman, Licking App. No. 01 CA 22, at 2,2001-Ohio-1378. Officer Cox's observation of appellant's bloodshot and glassy eyes and slurred speech was sufficient to establish reasonable articulable suspicion that appellant was intoxicated. Since Officer Wadsworth shared these observations with Officer Cox, once Officer Wadsworth observed appellant operating his vehicle, she had a reasonable articulable suspicion that appellant was driving while intoxicated.
 {¶ 21} Accordingly, we find the trial court properly denied appellant's motion to suppress. Officer Cox corroborated the anonymous tip when he talked to appellant and observed that appellant's eyes were bloodshot and glassy and his speech was slurred. Officer Cox shared this observation with Officer Wadsworth and under the fellow officers rule, Officer Wadsworth had a reasonable articulable suspicion to stop appellant's vehicle once she observed appellant operating his vehicle, even though appellant did not drive erratically or commit any traffic violations.
 {¶ 22} Appellant's First Assignment of Error is overruled.
 II {¶ 23} Appellant claims, in his Second Assignment of Error, the trial court erred when it denied his motion to suppress the results of the field sobriety tests based upon the arresting officer's failure to administer the field sobriety tests in strict compliance with standardized testing procedures. We disagree.
 {¶ 24} Appellant challenges the horizontal gaze nystagmus ("HGN") test and the one-leg stand test. The trial court, in its judgment entry, specifically found that Officer Wadsworth did not follow the proper procedures in administering the HGN test and suppressed these test results. See Judgment Entry, Sept. 5, 2002, at 6. However, the trial court did conclude the one-leg stand test was administered in conformity with NHTSA standards. Id. Therefore, we will address this assignment of error only as it pertains to the one-leg stand test.
 {¶ 25} In support of this assignment of error, appellant refers to the Ohio Supreme Court's decision in State v. Homan, 89 Ohio St.3d 421,2000-Ohio-212. In Homan, an Ohio State Highway Patrolman stopped the vehicle driven by Defendant Homan after twice observing the vehicle travel left of center. Id. at 421. When the trooper approached the vehicle, he noticed a strong odor of alcohol on Homan's breath and found her eyes to be red and glassy. Id. The trooper subsequently administered field sobriety tests, including the HGN test, the walk-and-turn test, and the one-leg stand test. Id. at 421-422. Based upon Homan's performance of these tests, as well as her own admission she had consumed three beers, the trooper placed her under arrest. Id. at 422.
 {¶ 26} At trial, during cross-examination, the trooper testified he deviated from established testing procedures when he administered the HGN and walk-and-turn tests to defendant. Id. Prior to the commencement of trial, Homan filed a motion to suppress the results of the field sobriety tests, arguing the trooper did not administer the tests in strict compliance with standardized methods and procedures. Id. at 423. The trial court found the results of the field sobriety tests indicated sufficient impairment to support the trooper's finding of probable cause, despite the trooper's failure to strictly comply with established police procedures. Id. The matter proceeded to trial and Homan was found guilty of DUI. Id.
 {¶ 27} On appeal, the Sixth District Court of Appeals found the trial court improperly admitted the results of the field sobriety tests as evidence of probable cause to arrest. Id. The court of appeals held the tests could not form the basis for probable cause to arrest because the trooper did not strictly comply with standardized testing procedures in the administration of the tests. Id. Nonetheless, the court of appeals found there remained sufficient evidence upon which the trooper could have relied in arresting Homan even with the suppression of the field sobriety tests. Id.
 {¶ 28} Upon appeal to the Ohio Supreme Court, the Court held: "[i]n order for the results of field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Id. at syllabus. However, even with the exclusion of the test results due to the trooper's lack of strict compliance, the Supreme Court, like the court of appeals, concluded the totality of facts and circumstances surrounding Homan's arrest supported a finding of probable cause. Id. at 427.
 {¶ 29} In the case sub judice, Officer Wadsworth testified, on cross-examination, as to how she administered the one-leg stand test. Following this explanation, defense counsel questioned Officer Wadsworth as follows:
 {¶ 30} "Q. I'm going to refer you to the manual on page 12 of the manual, procedures with regard to the one-leg stand testing. Can you go ahead and indicate what the first instruction you are suppose to give, what exactly you are suppose to do, while giving that verbal instruction?
 {¶ 31} "A. Please stand with your feet together, arms down at your sides, like this.
 {¶ 32} "Q. You are suppose to demonstrate; right?
 {¶ 33} "A. Correct.
 {¶ 34} "Q. You didn't demonstrate that on this evening?
 {¶ 35} "A. As I'm doing it I stand like that, sir.
 {¶ 36} "Q. That's not what you testified to; correct?
"* * *
 {¶ 37} "A. I can not sit here and tell you I had my hands down at my sides, no, I didn't, but that's what you do, you stand like this, feet together, hands at your sides.
 {¶ 38} "Q. That was not your testimony?
 {¶ 39} "A. Correct." Tr. Suppression Hrng., Aug. 14, 2003, at 41-42.
 {¶ 40} Thereafter, the trial court questioned appellant as to the administration of the one-leg stand test and Officer Wadsworth answered as follows:
 {¶ 41} "Q. I have just one question, a matter of clarification for me. Mr. Saia was asking you when you were demonstrating the one-leg stand, he asked you whether, as you told him, please stand with your feet together, arms down at your side. Did you do that as you told him?
 {¶ 42} "A. Yes. When we're telling them this, we actually do the same thing. That's how you begin the test. * * *." Id. at 44.
 {¶ 43} The trial court concluded, in its judgment entry, that the result of the one-leg stand test should not be suppressed for purposes of determining probable cause to arrest. We find the record supports the trial court's conclusion. Officer Wadsworth's testimony establishes that she strictly complied with standardized testing procedures when administering the one-leg stand test.
 {¶ 44} Appellant's Second Assignment of Error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Municipal Court, Delaware County, Ohio, is hereby affirmed.
By: Wise, J. Hoffman, P.J., and Edwards, J., concur.