**STATE of Tennessee, Appellee,**

v.

**William Wesley GOAD, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 27, 1985.

Permission to Appeal Denied by Supreme Court May 20, 1985.

Jim Weatherly, Metropolitan Public Defender, Suellen Wideman, Public Defender's Office, Jeff Devasher, Research Asst., Public Defender's Office, Nashville, for appellant.

W.J. Michael Cody, State Atty. Gen. & Reporter, Ann Lacy Johns, Asst. State Atty. Gen., Mark Beveridge, Robert Strong, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of armed robbery and of assault with the intent to commit murder in the first degree. He was sentenced to serve two consecutive life sentences.

The state's evidence, which is not challenged in this appeal, shows that on March 16, 1983, the defendant entered a convenience market, held a two-shot Derringer on the only employee present, and took money owned by the store. The defendant, after completing the robbery, ordered the employee to lie on the floor and then fired two shots into the head of the employee. The employee survived these wounds.

The defendant says the trial court should have suppressed the evidence of the Derringer pistol because it was seized during the course of an illegal arrest, says a photograph of the crime scene was overly inflammatory, says hearsay statements were admitted into evidence, says a sufficient chain of custody for two bullets removed from the victim was not shown, says a mistrial motion should have been granted because of improper conduct of the state in attempting to impeach the testimony of a defense witness, says the trial court erroneously ruled that prior robbery and armed robbery convictions could be used to impeach him if he testified, and says the conviction of armed robbery and assault with intent to commit murder should merge into one offense.

The judgments are affirmed.

In his first issue, the defendant says that the officer who stopped him did not have sufficient cause to do so, and therefore the gun taken from his person at that time should have been suppressed. He concedes that the trial court applied the correct legal standard—a brief investigatory stop must be justified by objective facts that would support a reasonable suspicion that the subject is or has engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Griffin v. State*, 604 S.W.2d 40 (Tenn.1980).

The record of the suppression hearing shows that after the victim identified his assailant as William Goad, Tennessee officers obtained an arrest warrant. Their investigation gave them reason to believe

that Goad was in Panama City in the company of his girlfriend and her son and in contact with a relative of hers who resided in that city. They transmitted to Florida officers this information, as well as a description of the defendant and the car he was thought to be driving, and the warning that he was dangerous and armed with a Derringer pistol.

Florida officers located Goad's companion and learned that he was waiting for her with several other persons at a particular unit of a local trailer court. Rather than approach the trailer, officers surrounded the area and waited for Goad to leave the trailer.

Officer Smith was stationed on a road that led from the park when he saw, walking from the trailer park, a man who fit the description supplied in the bulletin. He checked with his superior officer by radio and decided to stop the man and ask his identity. When the man walked past the patrol car, Smith ordered him to stop and place his hands on the car. He patted down the man's clothing, felt a gun in his pocket, and removed the two-shot Derringer that was introduced at trial. The man identified himself as William Goad.

The defendant argues the physical description was so vague and the surveillance area so broad that Smith could not identify the man he stopped as the subject of the warrants. He relies on several decisions in which our courts, applying the *Terry* rule, have found an absence of objective facts to support an investigatory stop.

■ This is not such a case. Officer Smith was looking for a thirty-five year-old white male, approximately five feet ten inches tall, of medium stocky build, and having brown hair. He had recent, reliable information that the man was in a certain trailer park, which contained perhaps fifty units. He also knew that a warrant had issued for the man's arrest and had reason to believe the man was armed and dangerous. He stopped a man with the described characteristics in the described location.

■ The officer articulated these specific facts, which we think were adequate to justify both the brief stop of the defendant to determine his identity and the pat-down for weapons. A stop and frisk on similar information was held reasonable in *Griffin v. State, supra.* The Constitution does not require absolute certainty in these situations, and the possibility that the officer might have stopped the wrong person on this information does not render his action unreasonable. The circumstances of the initial stop provided no basis for the exclusion of the Derringer from evidence.

■ The trial judge did not commit error in allowing a photograph which depicted the scene of the crime into evidence even though it showed blood of the victim.

■ The record shows that the trial judge carefully considered several photographs the state sought to introduce and that he allowed some into evidence and excluded others. The photograph complained of was a general depiction of the interior portion of the business where the crime took place. The trial judge clearly considered the probative value of this evidence versus the inflammatory effect it might have. He concluded the probative value outweighed the inflammatory effect which might be caused by the picture. This matter is within the discretion of the trial judge, and we see no abuse of this discretion in this case. *State v. Banks,* 564 S.W.2d 947 (Tenn.1978).

We agree with the defendant that the trial court erroneously allowed an officer to testify that the victim told him, "[H]e could identify the man who robbed him and if he ever saw the man or his picture that he could identify him."

The trial judge overruled the defendant's objection to this testimony and ruled that the evidence was admissible only to confirm what the victim told him and not for the truth of the matters contained in the statement.

■ The major issue in this case was the identification of the defendant as the perpetrator of the crime. The victim had

testified before the jury as to the defendant's identification and testified about the photograph of the defendant that he had selected from the pictorial array shown to him by the police. If the officer's testimony was introduced to confirm the identification of the defendant by the victim, then it hardly answers the objection to say it is not hearsay because it is not offered for the truth of the matters contained therein. If it is offered for such a purpose, then it seems obvious that the intent was to establish the truth of the victim's identification of the perpetrator of the crime and as such is hearsay. *See State v. Lewis*, 628 S.W.2d 750 (Tenn.Cr.App.1981); *Blankenship v. State*, 1 Tenn.Cr.App. 178, 432 S.W.2d 679 (1967). Contrary to the state's argument, the victim in this case did not, in direct examination or cross-examination, testify that he made such statement. Nor was the identification testimony seriously challenged or impeached.

■ We conclude, however, that given the certainty of the victim's identification testimony, the victim's previous knowledge of the defendant, and the scientific connection of the bullets removed from the victim's head with the Derringer taken from the defendant, this was harmless error beyond a reasonable doubt and did not affect the outcome of the trial.

■ We are of the opinion the chain of custody of the two bullets which were removed from the head of the victim was sufficiently established to allow their introduction into evidence and to allow the firearms examiner to testify as to the results of his examination of these bullets and their relationship to the Derringer.

The state's evidence was extensive on the custody of these bullets from the time they were recovered until they were introduced at the trial. The evidence shows that these bullets were passed along the chain until they were placed in the property room at the jail. The custodian in the property room did not testify about delivering these bullets to the officer who took them to the laboratory. However, this officer testified he obtained these bullets from the property room and took them to the lab. The defendant claims that the failure of those in charge of the property room to testify interrupted the chain of custody so severely as to render the introduction of the bullets and subsequent testimony concerning them improper.

Based upon the record in this case, we find the chain of custody was reasonably shown and the evidence was admissible. *Ritter v. State*, 3 Tenn.Cr.App. 372, 462 S.W.2d 247 (1970).

■ We do not think the defendant is entitled to a new trial on the basis of the state's cross-examination of a defense witness.

The nature of the witness's testimony was to give an alibi defense. The witness had testified that she and the defendant were at a grocery store near the scene of the crime at a time far removed from the time of the crime. The state, in cross-examination, asked if she had made prior statements about this time which were inconsistent with her testimony. In one of the questions the state asked if she had made a statement to an officer that placed the defendant in the area at the time of the crime, would such statement have been untrue. The defendant objected to the form of the question. The court instructed the state that they could ask the question in a different manner. The state abandoned this line of questioning. There was no further objection or motion concerning this question until the end of the state's opening argument, when the defendant moved for a mistrial or a limiting instruction to the jury on this matter. The trial court denied both motions.

The witness did not testify that she had made prior inconsistent statements. In fact, she denied making any such statements. There was no evidence to show such inconsistent statements had been made.

We think the motion for a mistrial at the end of the trial was untimely and was properly overruled. We do not think the failure of the trial judge to instruct the

jury to disregard the question asked by the state denied the defendant a fair trial. As pointed out, the witness denied making inconsistent statements. There was no evidence for the jury to weigh otherwise on this matter. Further, contrary to the claim of the defendant, there is no showing of bad faith on the part of the state in this record.

Had the defendant timely raised this matter of a mistrial and bad faith during the presentation of proof, the state might well have called a witness to show such statements had been made by a witness. In the absence of a sufficient objection, and in view of the state's abandoning the inquiry when the objection as to the form of the question was made, we see no reason to invalidate the verdict in this case.

The defendant's contention that a previous armed robbery conviction cannot be used for the purposes of impeachment because it is not a crime involving dishonesty is without merit or support in the law of this state.

In *State v. Fluellen,* 626 S.W.2d 299 (Tenn.Cr.App.1981), this Court held that armed robbery could be used to test the credibility of a testifying defendant because it was a form of larceny, a crime which involves dishonesty. The Supreme Court of this State held in *State v. Martin,* 642 S.W.2d 720 (Tenn.1982), that a conviction for an attempt to commit armed robbery fell within the dishonesty classification.

The defendant in this case attacks the *Fluellen* case because of its brevity and lack of logic. The defendant in *State v. Alonzo I. Stewart,* No. 83–96–III (Tenn.Cr. App., Nashville, Oct. 24, 1984), made the same attack and was repelled.

■ To convince us that armed robbery is not a crime of dishonesty, the defendant cites us to *United States v. Smith,* 551 F.2d 348 (D.C.Cir.1976), which held that armed robbery is not admissible for impeachment purposes because it does not involve dishonesty. We think that Court failed to recognize an essential element of armed robbery or an attempt to commit the offense. An essential element of robbery is that the perpetrator of the offense steals the goods and chattels of another or, in the case of an attempt to commit robbery, intends to steal the goods or chattels of the person assaulted. If this element is not present, the crime is not robbery or an attempted robbery. Stealing is defined in law as larceny. Larceny involves dishonesty. The fact that the perpetrator of the crime manifests or declares his dishonesty by brazenly committing the crime does not make him an honest person. We hold, as has been previously held, that convictions for these offenses are admissible in this state for impeachment purposes.

■ The trial court properly imposed separate sentences in this case.

The evidence shows the defendant completed the act of robbery, ordered the victim to lie on the floor, and then fired two bullets into the victim's head. These facts are strikingly similar to the facts in *State v. Black,* 524 S.W.2d 913 (Tenn.1975), wherein the Supreme Court held that robbery and felonious assault constituted separate and distinct offenses because the elements of each of the offenses were different and the proof on these elements are different.

DWYER and O'BRIEN, JJ., concur.