STATE of Tennessee, Appellant,

v.

**Steven MOORE, Appellee.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 24, 1989.

Rehearing Denied March 28, 1989.

Permission to Appeal Denied by Supreme Court July 3, 1989.

Sumter L. Camp, Nashville, for appellee.

Charles W. Burson, Atty. Gen. and Reporter, Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Victor S. Johnson, III, Dist. Atty. Gen., John Zimmerman, Asst. Dist. Atty. Gen., Nashville, for appellant.

## OPINION

JONES, Judge.

The State of Tennessee has appealed to this Court pursuant to Rule 9, Tenn.R. App.P., from an interlocutory order of the trial court suppressing evidence obtained as a result of a search and seizure. Both the trial court and this Court have granted the requisite permission to appeal; and this cause is now ripe for a decision on the merits.

## ISSUES PRESENTED FOR REVIEW

In this Court the State of Tennessee has raised three (3) issues for our review. The State contends that (a) the defendant did not have a reasonable expectation of privacy in the motor vehicle searched, (b) the trial court committed prejudicial error in determining that the radio transmission relied upon by the officer stopping the defendant was not supported by reasonable suspicion, and (c) the trial court committed prejudicial error in denying the State of Tennessee's motion to reconsider the granting of the defendant's motion to suppress.

## NATURE OF APPELLATE REVIEW

Issues raised by an interlocutory or extraordinary appeal, after permission to appeal has been granted, are decided in the same manner as if the issues had been raised in an appeal as of right. Since the thrust of the State of Tennessee's interlocutory appeal challenges the ruling of the trial court in granting the defendant's motion to suppress evidence, the time tested rules applicable to the findings of the trial court apply.

In this jurisdiction the findings of fact made by a trial court in resolving the merits of a motion to suppress are binding upon the appellate courts if the evidence contained in the record does not preponderate against these findings. *State v. O'Guinn*, 709 S.W.2d 561, 566 (Tenn.1986); *State v. Chandler*, 547 S.W.2d 918 (Tenn. 1977); *Monts v. State*, 218 Tenn. 31, 56, 400 S.W.2d 722, 733 (1966); *State v. Roberts*, 755 S.W.2d 833, 837 (Tenn.Crim.App. 1988); *Braziel v. State*, 529 S.W.2d 501,

506 (Tenn.Crim.App.1975). As this Court said in *Braziel*:

> [T]he trial court's determination ... is conclusive on appeal unless the appellate court finds that the evidence ... preponderates against the trial judge's findings. Upon appeal, the defendant has the burden of showing that the evidence preponderated against such a finding by the trial judge.

529 S.W.2d at 506.

Consequently, this Court must examine the record to determine if the State of Tennessee has met its burden of showing that the evidence adduced at the suppression hearing preponderates against the findings made by the trial court.

## DEFENDANT'S STANDING TO CHALLENGE SEARCH OF VEHICLE

The State contends that the defendant did not have a reasonable expectation of privacy in the rental car he was driving when stopped by the police. The State argues that the rental contract expired the day before Officer Williams stopped the defendant and searched the vehicle. Of course, if this issue is meritorious, a further discussion of the search of the vehicle will not be necessary.

The defendant has not briefed this issue. The defendant states in his brief that the question of standing was not raised by the State in the trial court. Of course, if this were true, the State would be estopped from raising this issue for the first time in this Court. *See State v. White*, 635 S.W.2d 396 (Tenn.Crim.App.1982); *State v. Layne*, 623 S.W.2d 629 (Tenn.Crim.App.1981). While the State did not advise the defendant of its intent to challenge the defendant's standing to contest the search of the motor vehicle, the State did raise the issue of standing, namely whether the defendant had a reasonable expectation of privacy in the vehicle, without objection; and the trial court ruled upon the merits of the issue. The evidence contained in the record relative to this issue is uncontradicted. The vehicle was leased in the name of the defendant, and the defendant maintained pos-

session of the vehicle. He used the vehicle in the course and scope of his employment while the motor vehicle he usually operated was being repaired. The rental contract had been extended on one occasion, and there is nothing contained in the record which establishes that the contract had not been extended or the rental agency had reported the vehicle stolen because it had not been returned timely.

The trial court found that the defendant had standing to challenge the search and seizure in question. His ruling is binding upon this Court as the evidence contained in the record does not preponderate against his finding in this regard. *See State v. Roberts,* supra.

### DENIAL OF STATE'S MOTION TO RECONSIDER

The hearing on the motion to suppress was conducted on the 19th day of June, 1987. The trial court entered a written order granting the motion to suppress on the 26th day of June, 1987.

On August 3, 1987, the State of Tennessee filed what is entitled a "Motion to Reconsider Order Suppressing Evidence, or to Allow State to Make Offer of Proof." The substance of the motion was a request to reopen the hearing to permit the State of Tennessee to introduce the testimony of Judy Warman, the manager of the apartment complex where the defendant was arrested and the burglary is alleged to have occurred. On August 5, 1987, the defendant filed a response opposing the motion. The trial court denied the State's motion on the 18th day of September, 1987. However, the trial court allowed the affidavit of Ms. Warman as an offer of proof.

■ A motion to reconsider or reopen the proof taken at a suppression hearing addresses itself to the sound discretion of the trial court; and this Court will not interfere with the exercise of this discretion absent a showing that an injustice occurred as a result of the denial of the motion. *State v. Bell,* 690 S.W.2d 879, 882 (Tenn.Crim.App.1985). In *Bell* the defendant moved the trial court to reopen the proof of a suppression hearing, which had been conducted five days earlier. The defendant wanted to introduce the testimony of a psychologist and a psychiatrist to establish the defendant's low intelligence and, as a result, the defendant was probably not capable of knowingly and intelligently waiving his *Miranda* rights. The trial court denied the *motion*. In affirming the decision of the trial court, this Court said:

> It is within the discretion of the trial judge to decide whether to reopen the proof for further evidence, and the decision of the trial judge thereon will not be set aside unless there is a showing that an injustice has been done.

690 S.W.2d at 882.

Before an "injustice" can be said to have occurred due to the denial of the motion, it must be established by the party aggrieved that the evidence sought to be introduced would establish that a different result would probably be reached by the trial judge in the resolution of the motion to suppress. *State v. Bell,* 690 S.W.2d at 882.

■ In the context of this case the trial court abused its discretion in denying the motion of the State of Tennessee to permit the introduction of the testimony of Ms. Warman. First, the defendant's motion to suppress is vague and ambiguous. Defense counsel admitted this during argument. Moreover, the motion did not meet the requirements of Rule 47, Tenn.R.Crim.P. As this Court stated in *State v. Burton,* 751 S.W.2d 440 (Tenn.Crim.App. 1988):

> A motion to suppress, like any other motion, is required to state the grounds upon which it is predicated with particularity. Tenn.R.Crim.P. 47. Thus, before an accused is entitled to an evidentiary hearing, the motion "must be sufficiently definite, specific, detailed and non-conjectural, to enable the court to conclude a substantial claim ... [is] presented." *State v. Davidson,* 606 S.W.2d 293, 297 (Tenn.Crim.App.1980). See *State v. Howell,* 672 S.W.2d 442, 444 (Tenn.Crim. App.1984).

751 S.W.2d at 445.

The assistant district attorney general could not determine from a reading of the motion the grounds relied upon by the defendant for the suppression of the evidence taken from the motor vehicle.

Second, it appears that the witnesses needed to establish the justification for the initial stop, arrest and subsequent search and seizure had left the employment of the Iroquois apartment complex, and the State had to conduct a vigorous search to find the witness Judy Warman. Third, the affidavit contained in the record makes it clear that a different result could and should have been reached if her testimony had been considered.

In view of the foregoing, this Court will consider the affidavit of Mrs. Warman in determining whether the stop of the defendant's vehicle, his subsequent arrest, and the search and seizure of the vehicle he was operating were reasonable within the meaning of the Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution.

## VALIDITY OF STOP AND RESULTING SEARCH AND SEIZURE OF MOTOR VEHICLE

Approximately two weeks prior to the date in question there had been a burglary of an apartment in the Iroquois Apartment complex. On the date the burglary occurred, Timothy Blodin, the postman who delivered the mail in the apartment complex, saw a male black in a late model Cadillac parked in front of the apartment that had been burglarized.

On August 30, 1986, Blodin noticed a late model Cadillac, occupied by a male black, parked in front of apartment 193. The occupant of the vehicle was drinking a Coca Cola and acting suspiciously. The occupant of the vehicle realized that he was being watched. Apparently Blodin noticed the vehicle on several occasions as he delivered the mail through the apartment complex. Noting that the motor vehicle and its occupant were similar in appearance to the vehicle and person he had seen in front of the apartment which was previously bur-

glarized, Blodin noted the make and color of the vehicle and obtained the license plate number. He reported what he had seen to the manager of the apartment complex.

The assistant manager of the apartment complex, while returning to the office, saw the same vehicle and occupant that Blodin had previously seen. However, the vehicle had been moved. It was parked in front of apartment 23.

The manager came to the conclusion that the occupant of the vehicle did not reside in the areas where he was seen. Apparently very few blacks lived in the apartment complex, and there were no black tenants living in the vicinity of apartments 193 and 233. Furthermore, the chalet area, where apartment 233 was situated, was an extremely private part of the complex; and the area was almost deserted during the daytime hours since most of the tenants were employed.

The manager subsequently dispatched a maintenance man to apartment 233 for the purpose of checking the vehicle. When the maintenance man arrived, he saw the vehicle described by the postman and the assistant manager, but no one was inside the vehicle. He did not see anyone matching the description of the occupant of the vehicle in the area.

The manager called Officer Cunningham, an off-duty policewoman, who was responsible for security in the apartment complex. The manager related to the officer what had been brought to her attention by the various witnesses.

Officer Cunningham called the dispatcher via police radio. Cunningham advised that she had received a call from the manager of the Iroquois Apartments and was advised there was a suspicious person in the complex. She described the person as a young, male black who was driving a late model silver or grey Cadillac. She reported that an apartment in the complex had been burglarized within the past two weeks, and a person and vehicle similar in appearance to the person and vehicle seen on that date had been seen in the complex on the date of the previous burglary. The officer stated

the manager believed there was a burglary in progress, since the suspicious person had been seen at the door to one of the apartments. Officer Cunningham asked that a police cruiser be dispatched to the apartment complex to investigate.

Officer Robert Williams, who heard the radio broadcast, responded to the call. As he entered the driveway leading to the apartment complex, he met a vehicle that matched the description given by Officer Cunningham. The person driving the vehicle also matched the description given in the broadcast. Officer Williams stopped the vehicle. He asked the driver, identified as the defendant, for identification. The defendant could not produce any identification, nor could he produce a driver's license upon request. He did produce a rental agreement form which showed that he had leased the vehicle he was driving. When asked why he was in the apartment complex, the respondent stated he was looking at apartments because he was contemplating moving into the apartment complex. A records check revealed that the defendant's driving privileges had been revoked, the credit card used to lease the vehicle had been reported stolen, and the defendant had prior convictions for burglary, possession of a controlled substance, as well as other offenses. The defendant was arrested and placed in the back seat of the police cruiser. A check with the office employees revealed that the defendant had not made any inquiry about leasing an apartment.

Since the defendant's vehicle and the police cruiser were blocking the roadway used to exit the apartment complex, Williams moved his cruiser to the office parking lot for safety reasons. Detective Roder, who also had responded to Officer Cunningham's call, moved the defendant's vehicle to the same parking lot. The officers searched the defendant's vehicle and seized a wrist watch, a tire iron, and a pair of gloves from the interior of the vehicle. While the officers were still in the area of the office, Blodin advised the officers that he discovered a door had been pried open in apartment 356, the door was still open, and the apartment had been ransacked.

The officers went to apartment 356 to investigate. The officers compared the tire iron seized from the defendant's vehicle with the pry marks contained on the door and doorjamb, and, according to Williams, the tire iron "fit like a glove" with the pry marks. In addition, scrape marks and paint found on the tire iron matched the paint and woodwork on the door and doorjamb of the apartment. The watch was identified by the occupant of the apartment as having been taken from the apartment during the burglary.

When Williams arrived at apartment 356, he realized that he first saw the defendant in the general area of this apartment.

■ A police officer may make an investigatory stop when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been, or is about to be, committed. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Griffin v. State*, 604 S.W.2d 40 (Tenn.1980); *State v. Goad*, 692 S.W.2d 32 (Tenn.Crim.App.1985). The phrase "investigatory stop" encompasses the stopping of a motor vehicle. *Griffin v. State*, supra; *State v. Denson*, 710 S.W.2d 524 (Tenn.Crim.App.1985). As can be seen, the touchstone supporting an investigatory stop by a police officer is the specificity of the information upon which the officer acts. *People v. Hazelhurst*, 662 P.2d 1081, 1085 (Colo.1983).

■ In determining whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances—the entire picture. *State v. Hullum*, 664 S.W.2d 314, 317 (Tenn.Crim.App.1983); *People v. Hazelhurst*, 662 P.2d at 1084. This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. *Terry v. Ohio*, supra.

A police officer may make an investigatory stop based upon information contained in a police radio broadcast, bulletin or a flyer issued by another law enforcement agency. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). *See Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *State v. Goad*, 692 S.W.2d at 35; *State v. Hullum*, 664 S.W.2d at 317; *State v. Raspberry*, 640 S.W.2d 227, 229 (Tenn.Crim.App. 1982); *State v. Scott*, 405 N.W.2d 829, 831 (Iowa 1987); *State v. Wheeler*, 108 Wash.2d 230, 737 P.2d 1005, 1007 (1987). It is not necessary that the police officer making the investigatory stop have personal knowledge of the facts contained in the radio broadcast, bulletin or flyer before making the stop. *United States v. Hensley*, supra; *United States v. Longmire*, 761 F.2d 411 (7th Cir.1985); *People v. Hazelhurst*, 662 P.2d at 1085. *See Whiteley v. Warden*, supra. However, it must be established that the person or agency responsible for the broadcast, bulletin or flyer has specific and articulable facts that a criminal offense had been, or was about to be, committed. *United States v. Hensley*, supra; *United States v. Mobley*, 699 F.2d 172 (4th Cir.1983); *United States v. Robinson*, 536 F.2d 1298 (9th Cir.1976); *People v. Hazelhurst*, supra; *People v. Brown*, 88 Ill.App.3d 514, 43 Ill.Dec. 505, 410 N.E.2d 505 (1980); *State v. Benson*, 198 Neb. 14, 251 N.W.2d 659 (1977). *See Hughes v. State*, 588 S.W.2d 296, 303 (Tenn.1979). As the United States Supreme Court said in *United States v. Hensley:*

> Assuming the police make a *Terry* stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop ... and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department.

469 U.S. at 233, 105 S.Ct. at 682, 83 L.Ed.2d at 615.

Thus, the prosecution has the burden of establishing by a preponderance of the evidence that the police officer or agency responsible for the broadcast, bulletin or flyer had a reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been, or was about to be, committed before the acts of the officer relying upon the information can be said to be legal. *United States v. Longmire*, 761 F.2d at 418; *Hughes v. State*, 588 S.W.2d at 303 (Tenn.1979); *State v. Hill*, 3 Ohio App.3d 10, 443 N.E.2d 198 (1981). *See Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, 238 (1983); *State v. Scott*, 405 N.W.2d 829, 832 (Iowa 1987). This may be accomplished by the testimony of the officer making the radio broadcast or issuing the bulletin or flyer, or, as here, through the testimony of the witnesses who perceived the facts that were ultimately communicated to the other police officers. *See State v. Goad*, supra. In this case it was not necessary for the State to produce Officer Cunningham. She simply served as a conduit in relaying the information supplied to her by the postman and manager of the Iroquois Apartments to other officers. In short, the failure to present Officer Cunningham at the suppression hearing was not fatal to the contention of the State that Williams' stop of the defendant was a proper investigatory stop within the meaning of *Terry v. Ohio*, supra.

We are of the opinion that the evidence contained in the record preponderates against the finding of the trial court that the stop of the defendant's motor vehicle violated the constitutional mandates of both the United States and Tennessee Constitutions. Based upon the totality of the circumstances hereinabove enumerated, along with the rational inferences and deductions that Officer Williams could draw from the facts and circumstances known to him, the State has satisfied its burden in establishing that there was an adequate, reasonable suspicion, supported by specific and articulable facts, that the defendant had been engaged in unlawful activities. *See State v. Scott*, 405 N.W.2d at 832.

When the defendant was unable to produce a driver's license, and Officer

Williams subsequently learned that the defendant's driving privileges had been revoked, Williams had probable cause to arrest the defendant for driving a motor vehicle after his license had been revoked. *See State v. Hullum,* 664 S.W.2d at 317–318. This also permitted Officer Williams to search the defendant's motor vehicle incident to the arrest. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *State v. Burton,* 751 S.W.2d at 446–447; *Wadley v. State,* 634 S.W.2d 658, 663 (Tenn.Crim.App.1982). The fact that the officers waited until the vehicles were moved to a position of safety in the parking lot before the vehicle was searched did not dissipate or eradicate the right of the officers to search the motor vehicle incident to the defendant's arrest. Only a few minutes expired between the arrest and the search of the vehicle.

We also believe that there was probable cause for the search of the vehicle once it was learned that a burglary had occurred. *See United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State v. Shrum,* 643 S.W.2d 891 (Tenn.1982). The officers were aware that the defendant and the vehicle he was operating were strikingly similar to the person and vehicle seen in front of the apartment before the previous burglary. The officers were also aware the defendant had exited the motor vehicle in front of the chalet, and there were no black tenants living in the two areas where the defendant was seen by the postman and the assistant manager. Officer Williams discovered by a record check that the defendant had a prior conviction for burglary, and, when stopped, the defendant did not have any identification on his person. Also, the defendant lied to Officer Williams when he was asked why he was in the apartment complex. Officer Williams saw the defendant leaving the immediate area where the burglary had occurred as he was entering the complex. Furthermore, the requisite exigent circumstances were present at the time of the search.

The judgment of the trial court suppressing the evidence seized from the defendant's vehicle is reversed, and this cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

SCOTT, J., and CORNELIUS, Special Judge, concur.

### ORDER DENYING PETITION TO REHEAR

The appellee, Steven Moore, has filed a petition to rehear pursuant to Rule 39, Tenn.R.App.P. The appellee alleges that the opinion of this Court "overlooks or misapprehends a material fact or proposition of law, and the opinion relies upon matters of fact or law upon which the parties have not been heard and are open to reasonable dispute." The appellee further alleges that the opinion is in conflict with existing law. We disagree.

This Court is satisfied that the correct result was reached as to each issue raised by the appellee. Accordingly, the petition to rehear is denied.

(s) Jerry Scott
JERRY SCOTT, JUDGE
(s) Joe B. Jones
JOE B. JONES, JUDGE
(s) Allen R. Cornelius
ALLEN R. CORNELIUS, JR. S.J.