IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2001

## STATE OF TENNESSEE v. MICHAEL PITTMAN

**Appeal from the Criminal Court for Shelby County**
**No. 99-03410    Chris Craft, Judge**

---

**No. W2000-01027-CCA-R3-CD - Filed May 31, 2001**

---

After a jury trial, the Defendant, Michael Pittman, was convicted of aggravated robbery. He was subsequently sentenced to twenty years incarceration as a Range II, multiple offender. In this appeal as of right, the Defendant argues that the evidence was insufficient to support his conviction and that the trial court abused its discretion by ruling that his prior convictions for robbery and theft were admissible to impeach his credibility should he elect to testify. We conclude that the evidence was sufficient to support the Defendant's conviction and that the trial court did not abuse its discretion by ruling that the Defendant's prior convictions were admissible. Thus, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN, J., and L. T. LAFFERTY, SR. J., joined.

A. C. Wharton, Public Defender; Tony N. Brayton, Assistant Public Defender, Memphis, Tennessee, for the appellant, Miochael Pittman.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; William L. Gibbons, District Attorney General; and Karen Cook, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At trial, Corey Miller testified that around 1:30 or 2:00 a.m. on December 22, 1998, he stopped at an Amoco gas station in Memphis, Tennessee to purchase gasoline. He went to the clerk's window to pay for his gasoline, and a white Chevrolet pulled up to the pumps near his car. Mr. Miller testified that the driver of the white Chevrolet got out of the car and asked him about the gold rims he had on his car. The man asserted that the rims on Mr. Miller's car belonged to him, but Mr. Miller told the man that he had ordered the rims from California. The man then went back to his car and drove around to the other side of the gas station. At that point, another man got out of

the white Chevrolet, walked to the clerk's window, and told Mr. Miller that the rims belonged to the driver. That man, whom Mr. Miller identified as the Defendant, pulled out a gun and demanded Mr. Miller's keys. Mr. Miller testified that he told the Defendant that the car was already running. Due to a "worn-down" key, Mr. Miller was able to leave the car running but still remove the key from the ignition and lock the door. The Defendant then demanded that Mr. Miller unlock the door, which Mr. Miller did. The Defendant drove away in Mr. Miller's car, but did not take Mr. Miller's keys.

When the police arrived, Mr. Miller gave them a description of the two men in the white Chevrolet and the gun used by the Defendant. He described the gun as "a steel gray 9mm Ruger or a .45." During trial, Mr. Miller identified a gun as being similar to the one possessed by the Defendant that night. Mr. Miller testified that after talking to the police, his mother came to pick him up at the gas station with Mr. Miller's girlfriend and his girlfriend's sister's boyfriend. They started driving around looking for signs of the stolen car. After pulling out of an apartment complex nearby, Mr. Miller spotted the white Chevrolet in which the Defendant had been riding before he took Mr. Miller's car. Mr. Miller said that he called "911" on the cellular phone, and his mother started following the car. The police arrived and stopped the car, and the Defendant and a different driver emerged from the car. Mr. Miller identified the Defendant on the scene as the person who had taken his car at gun-point, but he could not identify the driver. Mr. Miller testified that his tool box and his two "kick boxes" were located in the white Chevrolet. He identified pictures of this property, which had been taken by the Defendant when the Defendant drove away in his car.

Stacie Tate, the clerk who was working at the Amoco gas station, testified that she had known Mr. Miller for approximately seventeen years, though they had not seen each other in a long time. She said that she was talking to Mr. Miller when she saw a man get out of a white car on the other side of the building. As Ms. Tate was helping another customer, she saw the man approach Mr. Miller and start talking to him about some gold rims. She then saw the man pull a gun on Mr. Miller, put the gun to Mr. Miller's side, and tell Mr. Miller to walk to the car because he wanted the keys to the car. The man drove away in Mr. Miller's car. She said that the man had a silver gun that "was the type of gun that the policemen carry." She identified a gun at trial that looked like the gun she saw that night. Ms. Tate also identified the Defendant as the person she saw pull a gun on Mr. Miller that evening and drive away in Mr. Miller's car. She further testified that she identified a picture of the Defendant as the person there that night when she was shown a photographic lineup by an investigator with the district attorney's office. On cross-examination, Ms. Tate admitted that she had been told by someone from the district attorney's office where the Defendant would be sitting in the courtroom and that she only looked at that spot when she was asked whether she could identify the man she saw that night; notwithstanding, she asserted that her in-court identification was not based on the information she received about where the Defendant would be sitting. Ms. Tate clarified that she had asked prior to trial where the parties would be sitting because she was not familiar with courtrooms.

Joe Owen, a Memphis police officer, testified that he stopped a vehicle in which the Defendant was riding on December 22, 1998, in response to a radio broadcast. At the scene, Mr. Miller identified the Defendant as the person who had robbed him of his car. A search of the vehicle

revealed a Ruger semi-automatic pistol, which was recovered between the cushions of the driver's seat.

Bryant Jennings, a crime scene officer with the Memphis Police Department, testified that he tagged the weapon and its magazine recovered by Officer Owen. The magazine had five live rounds in it. Neither the weapon nor the magazine was checked for fingerprints. During a courtroom demonstration, Officer Jennings displayed both his standard issue police weapon and the weapon found in the vehicle for the purpose of demonstrating the similarities of the two weapons. The weapon seized from the vehicle was introduced into evidence.

Sergeant Joseph Scott was assigned as the primary lead investigator in this case. He testified that he interviewed the Defendant on the morning of December 23, 1998. During the interview, the Defendant stated that he did take a car from someone at the Amoco station but that he did not have a gun. The Defendant asserted that he was with some other people and that the other people told him the rims on Mr. Miller's car had been stolen from them. According to Sergeant Scott, the Defendant stated that these other people threatened him with harm if he did not take the car. However, the Defendant would not provide Sergeant Scott with information identifying the people.

## SUFFICIENCY OF THE EVIDENCE

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Aggravated robbery is "the intentional or knowing theft of property from the person of a another by violence or putting the person in fear" accomplished by use of a deadly weapon or where the victim suffers serious bodily injury. Tenn. Code Ann. §§ 39-13-401, -402. The Defendant does not dispute that he took Mr. Miller's car, but he asserts that he did not possess a weapon. He claims that he merely got in the running car and drove away, and he asserts that the testimony of Mr. Miller and Ms. Tate was not credible enough to support the finding that he possessed a weapon. However, as previously stated, credibility determinations are a matter for the trier of fact, not this Court. See Morris, 24 S.W.3d at 795; Pappas, 754 S.W.2d at 623. Looking at the evidence in the light most favorable to the State, both Corey Miller and Stacie Tate testified that the Defendant pulled a gun on Mr. Miller, forced Mr. Miller to open the car door, and then drove away in the car. The Defendant was later arrested in a car which contained some of Mr. Miller's property and a gun matching the description provided by Mr. Miller and Ms. Tate. Thus, we conclude that the evidence was sufficient for a rational jury to conclude that the Defendant intentionally or knowingly took Mr. Miller's car from him by putting Mr. Miller in fear by the use of a deadly weapon.

## ADMISSIBILITY OF PRIOR CONVICTIONS

The Defendant also claims that the trial court erred by concluding that his prior convictions for robbery and theft would be admissible for purposes of impeachment should he decide to testify. Tennessee Rule of Evidence 609(a) provides, in pertinent part:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:
>
> (1) The witness must be asked about the conviction on cross-examination. . . .
>
> (2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.
>
> (3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

In balancing the probative value verses the prejudicial impact of a prior conviction, "a trial court should (a) 'assess the similarity between the crime on trial and the crime underlying the impeaching conviction' and (b) 'analyze the relevance the impeaching conviction has to the issue of credibility.'" State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992) (quoting Neil P.

-4-

Cohen, et. al, Tennessee Law of Evidence, § 609.9 at p. 288 (2nd ed. 1990)); see also State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). A trial court should give careful consideration to the question when the prior conviction is the same or similar to the offense charged in order "to avoid the impression on the fact-finder that, if the defendant committed the same or similar crime before, then he or she probably committed the offense on trial as well." State v. Roberts, 943 S.W.2d 403, 408 (Tenn. Crim. App. 1996), overruled on other grounds by State v. Ralph, 6 S.W.3d 251 (Tenn. 1999). However, evidence of a prior conviction which is the same or similar to the current offense is not per se inadmissible; "[t]he standard is not whether there is any prejudice to the defendant by allowing the State to use the prior conviction for impeachment, but whether the possible prejudice is outweighed by the probative value of the evidence as to the defendant's credibility as a witness." Id. The trial court's determination under Rule 609 will not be reversed absent an abuse of discretion. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

Prior to trial, the State provided notice that it wished to use six prior convictions to impeach the Defendant's credibility should he testify. Those prior convictions included three robbery convictions, one aggravated robbery conviction, one theft conviction, and one reckless endangerment conviction. The trial court conducted a hearing pursuant to Rule 609 and ruled that the reckless endangerment conviction was inadmissible because it did not involve dishonesty. However, the court also determined that

> [t]he theft is admissible as a dishonest crime. As to the three robberies and the aggravated robbery, although they are similar in character, they also involve dishonesty and are very probative, in my opinion, as to the credibility of the defendant.
>
> The aggravated robbery is a little close, though. It's exactly the same offense as this offense, so I'm going to do this. I'm going to allow [the prosecutor] to ask [the Defendant] about all four of these robberies, except that she is going to have to refer to the aggravated robbery as a mere robbery.
>
> . . .
>
> We won't let it get out that it was an aggravated robbery which the jury will know involved a firearm or injury. And, of course, if the defendant denies being convicted of robbery, then I'm going to allow the state to put on proof that he was, in fact, convicted of aggravated robbery.
>
> So you need to let your client know, if he testifies, he can't deny it just because I'm . . . allowing you to ask about just robbery and not aggravated robbery. But I'm doing that to try to lessen the prejudicial effect. But I find that the probative value outweighs the prejudicial effect.

The trial court thus ruled that the State could ask the Defendant about four prior robbery convictions and one prior theft conviction.[1]

_____

[1]In State v. Taylor, 993 S.W.2d 33 (Tenn. 1999), our supreme court held that the nature of the prior offense used for impeachment must be identified so as "to avoid confusion and speculation on the part of the jury" and to "permit

(continued...)

The Defendant asserts that his prior convictions for robbery and theft were highly prejudicial because of their similarity to his present offense, and that they were of little probative value on the issue of his credibility because "they do not involve 'dishonesty or false statement' as contemplated by Rule 609(a)(2)." However, the courts of this State have repeatedly held that robbery and theft are crimes of dishonesty, "thus lending greater weight to their probative value regarding credibility." State v. Blevins, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997); see also State v. Galmore, 994 S.W.2d 120, 122 (Tenn. 1999) ("Robbery is a crime involving dishonesty and may be used for impeachment purposes."); State v. Caruthers, 676 S.W.2d 935, 940-41 (Tenn. 1984) (armed robbery involves dishonesty); State v. Baker, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997) (offenses of burglary and theft involve dishonesty). In State v. Goad, 692 S.W.2d 32 (Tenn. Crim. App. 1985), this Court explained the reasoning behind such rulings as follows:

> An essential element of robbery is that the perpetrator of the offense steals the goods and chattels of another or, in the case of an attempt to commit robbery, intends to steal the goods or chattels of the person assaulted. If this element is not present, the crime is not robbery or an attempted robbery. Stealing is defined in law as larceny. Larceny involves dishonesty. The fact that the perpetrator of the crime manifests or declares his dishonesty by brazenly committing the crime does not make him an honest person. We hold, as has been previously held, that convictions for these offenses are admissible in this state for impeachment purposes.

Id. at 37. Thus, we conclude that the Defendant's prior theft and robbery convictions were highly probative on the issue of his credibility.

Nevertheless, the Defendant also asserts that these prior convictions were highly prejudicial. With this contention, we agree. The trial court attempted to limit the prejudicial effect by ruling that the State could only refer to the aggravated robbery conviction as robbery, but the convictions were still very similar to the offense charged. However, the Defendant made his credibility important by asserting that while he took Mr. Miller's car, he did not use a weapon. Had the Defendant testified, the jury would have been required to make a judgment call between the Defendant's credibility and the credibility of the other witnesses who claimed that the Defendant used a weapon. Thus, we cannot say that the trial court abused its discretion by ruling that the prejudicial effect of the convictions was outweighed by their probative value.

Moreover, any error in the trial court's ruling is not grounds for reversal unless the error "affirmatively appear[s] to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a); see also Tenn. R. App. P. 36(b). We conclude that any error would be harmless in this case. After the trial court's ruling, the Defendant elected not to testify. However, he made an offer of proof in which he admitted stealing the car from Corey Miller but denied possessing a weapon. He

---

[1](...continued)
the jury to properly evaluate the conviction's probative value on the issue of credibility." Id. at 34. We believe that reference to the Defendant's prior aggravated robbery conviction as "mere robbery" would satisfy these requirements in that confusion and speculation would be avoided and the jury would be able to properly evaluate the conviction's probative value.

asserted that he just jumped into the other car, which was running and had no one in it, and drove away. This was essentially the same version of events that the Defendant told Sergeant Scott, albeit with more elaboration, which was introduced into evidence through the testimony of Sergeant Scott. Thus, the jury had already rejected this version of events. In addition, there was overwhelming evidence of the Defendant's guilt. The Defendant admitted taking the car, and two witnesses testified that he pulled a gun on Mr. Miller prior to taking the car. The Defendant was later found in possession of a gun matching the description given by the two witnesses. In light of this evidence of the Defendant's guilt and the jury's prior rejection of the Defendant's version of events, we cannot say that the Defendant's proposed testimony would have affected the result of the trial on the merits.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE