# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 21, 2011 Session

## STATE OF TENNESSEE v. JOSEPH A. PATTERSON

**Appeal from the Criminal Court for Williamson County**
**No. 1-CR094413     Jeffrey S. Bivins, Judge**

_____

**No. M2010-02360-CCA-R3-CD - Filed August 22, 2011**

_____

The Defendant, Joseph A. Patterson, was found guilty at a bench trial before the Williamson County Criminal Court of driving under the influence, second offense, a Class A misdemeanor. See T.C.A. § 55-10-401 (2008) (amended 2010). He was sentenced to eleven months and twenty-nine days, with fifty-five days of the sentence to be served. On appeal, he contends that the trial court erred by denying his motion to suppress. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Dana C. McLendon, III (on appeal) and Ernest Williams (at trial), Franklin, Tennessee, for the appellant, Joseph A. Patterson.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Kim R. Helper, District Attorney General; and Kelly Lawrence, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the suppression hearing, Franklin Police Officer Tami Crowe testified that around 12:30 a.m. on May 15, 2009, she was working in the Cool Springs area on Baker's Bridge Road. She said she saw a car that "was swerving and crossing over the lines that indicate the lanes of travel." She turned on her emergency lights, but the car did not stop until a minute to a minute and a half later after she activated the emergency audio equipment on her patrol car. She said the car passed several parking lots and businesses where it could have stopped sooner. She also noted that at a red light, the Defendant pulled past the line marking the

pedestrian lane. During Officer Crowe's direct examination testimony, a video recording of the traffic stop was played for the trial court. Officer Crowe also identified an aerial photograph, which was received as an exhibit.

On cross-examination, Officer Crowe acknowledged that the Defendant did not appear to be trying to evade the stop after she activated her emergency lights. She said the video recording showed the swerving she saw. On questioning by the court, she clarified that she based the stop on the driving shown on the video recording and not on anything that occurred earlier.

After receiving the evidence at the suppression hearing, the trial court observed:

> As to the first issue as to whether there was reasonable suspicion for the initial stop or not, the Court does note that Officer Crowe has directly testified witnessing the Defendant . . . cross over the lines and not stay within his – not maintain his lane of travel in this matter. Although the Court certainly notes the video is difficult to see given the darkness of the video, it does appear on at least one occasion that he did move over toward the other lane. Now, quite frankly, whether that was a lane change or whether it's a moving out of that, it's difficult for the Court to determine.
>
> . . .
>
> Therefore, the Court will credit the testimony – the direct testimony of Officer Crowe and find that the video does not contradict the testimony. While not greatly corroborative of it, [the Court] does not find in this matter that it impeaches that testimony. And as such, the Court will find that to be sufficient reasonable suspicion to justify the stop by Officer Crowe in the matter.

The record does not contain a transcript of the Defendant's trial. The parties have, however, included a filed document stating that "the evidence offered at trial that is relevant to the issue to be raised on appeal is substantively identical to the testimony offered by FPD Officer Tami L. Crowe during her testimony [at the suppression hearing]" and adopting the suppression hearing transcript as the statement of the evidence at trial. The document identified the issue to be raised on appeal as "whether the trial court correctly interpreted and applied TCA § 6-54-301." That statute relates to police authority beyond city and town

corporate limits. On appeal, however, the Defendant has challenged the substantive basis upon which the trial court denied the motion to suppress.

The Defendant contends that the trial court erred by denying his motion to suppress because Officer Crowe stopped the Defendant without reasonable suspicion or probable cause to believe the Defendant was driving while impaired. The State contends that the Defendant's driving provided specific and articulable facts on which Officer Crowe based her reasonable suspicion. We agree with the State.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Furthermore, questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. See State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997). An automobile stop constitutes a seizure within the meaning of these constitutional provisions. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990); State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). The police may stop a vehicle if they have reasonable suspicion based upon specific and articulable facts that an occupant is violating or is about to violate the law. See United States v. Brignoni-Ponce, 422 U.S. 873 (1975); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992); Hughes v. State, 588 S.W.2d 296, 305 (Tenn. 1979). In determining whether an officer's reasonable suspicion is supported by specific and articulable facts, "a court must consider the totality of the circumstances–the entire picture." State v. Moore, 775 S.W.2d 372, 377 (Tenn. Crim. App. 1989).

In support of his argument that the stop was unconstitutional, the Defendant notes that the only proof to support the trial court's finding that Officer Crowe had reasonable suspicion was the evidence he swerved and failed to remain in his lane. He cites two Tennessee Supreme Court cases to support his argument that this did not provide sufficient reasonable suspicion to support a traffic stop.

The first is State v. Binette, 33 S.W.3d 215 (Tenn. 2000), in which a police officer followed the defendant for several minutes and videotaped the defendant's driving. The officer narrated the videotape as he made it, stating that he observed the defendant cross the yellow line, swerve in his lane, and travel about fifteen miles over the speed limit. The

officer did not testify at the hearing, but the videotape was received as evidence. The defendant testified that he did not make the driving errors alleged in the officer's statements on the videotape. After reviewing the videotape, the trial court found that it demonstrated "fairly significant weaving" by the defendant. The trial court held that the weaving it observed on the videotape provided reasonable suspicion for the officer to stop the defendant. Id. at 216. The supreme court disagreed, stating, "We simply do not find any evidence of pronounced weaving or hard swerving by Binette, and we disagree with the State's contention that the videotape shows that Binette touched the center line at least four times." Id. at 219. The court noted the defendant's correct driving through several intersections, his maintaining a proper distance from other cars, and his travel on a winding road. The supreme court said that contrary to the officer's statements on the videotape, the tape did not reflect that the defendant violated any rules of the road. Id. at 219. Thus, the supreme court held that the State failed to establish reasonable suspicion to support the stop and that the trial court erred in denying the motion to suppress. Id. at 220. The supreme court noted, however, that the case presented the unusual situation of no in-court testimony by the officer and the trial court's ruling reling entirely on its own perceptions from viewing the videotape. The court also noted that the trial court failed to make a credibility finding about the defendant's testimony and that even if the defendant's testimony were discredited, the videotape offered by the State did not support a finding of reasonable suspicion. Id.

The second case the Defendant cites is State v. Garcia, 123 S.W.3d 335 (Tenn. 2003), in which an officer testified that she saw the defendant's car "swerving in its lane of traffic" from the right-hand marker to the left-hand marker. Id. at 338. The officer testified that she stopped the defendant because she thought he might be intoxicated, for the defendant's safety, and for the safety of others. Id. She testified at the trial that she was also concerned the defendant might be falling asleep. Id. at 341. A videotape of the stop was received as evidence, although there was a malfunction of the audio on the tape. Id. at 340. The trial court ruled that there was reasonable suspicion for the stop, and this court affirmed the denial of the motion to suppress but reversed the conviction based upon trial error. Id. at 337, 341-42. On review, the supreme court noted that the officer's testimony of the defendant's errant driving was at odds with the court's review of the videotape reflecting that the defendant did not weave, appear to speed, or make sharp or jerking movements. The court said that the videotape reflected only that the defendant "slowly moved his vehicle within his lane of travel approximately twice over a period of approximately two minutes" and that other cars easily passed the defendant's car. Id. at 345. The supreme court held that the evidence preponderated against the trial court's conclusion that the totality of the circumstances established reasonable suspicion for the stop. Id.

In the present case, Officer Crowe testified that before she began the stop, she saw the Defendant "swerving and crossing over the lines that indicate the lanes of travel." The trial court accredited this testimony. We have reviewed the video recording, and we note its poor

-4-

quality due to inadequate lighting. The tape reflects side-to-side movement by the Defendant's car, but due to the low lighting and the angles from which the video was recorded, it is not apparent whether the Defendant crossed the outside lines of his lane. We agree with the trial court's assessment that the tape is neither highly corroborative of nor contradictory to Officer Crowe's testimony. Based upon the accredited testimony of Officer Crowe that the Defendant was swerving and crossing over the lines marking the lanes and the lack of definitive proof about the Defendant's driving from the videotape, we hold that the evidence does not preponderate against the trial court's determination that Officer Crowe had reasonable suspicion to stop the Defendant.

In so holding, we have rejected the Defendant's analogy of his case to Binnette and Garcia. In Binette, the officer's statements on the videotape were contradicted by the video portion of the tape. Likewise, in Garcia, the officer's testimony about the defendant's driving was at odds with the recorded video evidence. As we noted, Officer Crowe's testimony is neither corroborated nor impeached by the video recording of the Defendant's driving. Further, in both Binette and Garcia, the video evidence demonstrated at most that the defendants moved within their lanes of travel. In this case, Officer Crowe testified that the Defendant was swerving and crossing over the lines marking the lane boundaries. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE