IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 13, 2012

## ASHLEY HERMAN v. DANIEL HERMAN

**Appeal from the Circuit Court for Davidson County**
**No. 08D1900     Carol Soloman, Judge**

---

**No. M2012-00395-COA-R10-CV - Filed May 9, 2012**

---

Two years after the divorce, Father sought to be named primary residential parent due to Mother's alleged deteriorating mental health. Father sought discovery of Mother's mental health records. Mother objected. The trial court ordered production of the records for in camera inspection. Mother filed an appeal pursuant to Tenn. R. App. P. 10, which this court granted. We reverse the trial court's order.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Mary B. Langford, Nashville, Tennessee, for the appellant, Ashley Herman.

Michael K. Smith, Nashville, Tennessee, for the appellee, Daniel Herman.

### OPINION

Ashley Herman ("Mother") and Daniel Herman ("Father") divorced in 2009. They had one child. The parenting plan named Mother as the primary residential parent. Father received two days and three nights a week with the child. Unfortunately, Mother continued to experience mental health problems which resulted in several extended hospitalizations. During these hospitalizations, the child stayed with Father.

On June 22, 2011, Father filed a petition seeking to modify custody and child support based on Mother's hospital stays. The petition states that Mother has "a history of mental illness and was diagnosed years ago during the marriage with multiple personality disorder." It alleges that "over the past year the Mother's mental illness has substantially worsened," that "she has not been compliant with her medication nor treatment," and that she was

hospitalized from October 2010 to February 2011 and again on June 13, 2011. The petition maintains that "living with and observing this behavior and mental illness on a daily recurrent basis must be severely detrimental" to the child. Although the petition states that "Father has observed increased seriousness of the illness," it fails to state what actions or symptoms have been observed. Father's petition maintains that the child's residence with Mother is not in the child's best interest and that Mother's deteriorating mental health, coupled with the corresponding increase in care by Father, represents a substantial and material change of circumstances.

Father sought discovery from Mother in which he sought to acquire her mental health records. Mother objected. Father filed a motion to compel and Mother filed a motion to quash it. At the hearing on both motions, the trial court ordered that the records be filed under seal with the court clerk within two weeks. There is some dispute about whether permission for an interlocutory appeal was granted by the trial court, but there is no dispute that the court refused to stay the order to produce the records. Because the order was not stayed, Mother sought appellate review under Tenn. R. App. P. 10 even though the trial court's written order had not been entered. On February 24, 2012, this court stayed enforcement of the trial court's order and ordered Father to file an answer to Mother's application. On March 13, 2012, we granted the application for extraordinary appeal and ordered the trial court clerk to transmit the record. Because the filings set forth fully the parties' positions, we waived further briefing and oral argument to expedite the appeal and save the parties additional time and expense.

Once permission to appeal an interlocutory order has been granted, the issues raised are reviewed and decided in the same manner as in appeals as of right. *Peck v. Tanner,* 181 S.W.3d 262, 265 (Tenn. 2005); *State v. Moore*, 775 S.W.2d 372, 374 (Tenn. Crim. App. 1989). Thus, conclusions of law are reviewed under a de novo standard with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

There is little doubt that the records sought by Father are confidential. *See* Tenn. Code Ann. §§ 24-1-207 and 63-11-213.[1] In fact, Father does not challenge their confidentiality.[2] Rather, he argues that Tenn. Code Ann. § 33-3-105 allows disclosure of these records. In *State v. Fox*, 733 S.W.2d 116, 118 n.1 (Tenn. Crim. App. 1987), however,

---

[1]Tenn. Code Ann. § 24 -1-207 is the psychiatrist - patient privilege and Tenn. Code Ann. § 63-11-213 is the psychologist/psychological examiner-client privilege.

[2]We note that Father's request for production included a request for a signed HIPPA release form for all records of psychological treatment providers in the past five years. This request shows that Father knew that such records are confidential.

the court stated that "Title 33 of the Tennessee Code deals with mentally ill and retarded persons in the care and custody of the State." Since Mother was not in the care and custody of the State of Tennessee, Tenn. Code Ann. § 33-3-105 does not apply.

Father also argues that the records must be produced so the court can fulfill its obligation to consider the mental health of the parents and caregivers as required by Tenn. Code Ann. § 36-6-106, which lists factors for the court to consider in determining the child's best interest in the course of a custody proceeding. Courts should and do consider this factor when one or both parties provide evidence relating to the mental health of the parents or caregivers. It is not, however, a license to disregard statutory privileges from disclosure.

Father indicates that he has not sought an order for a mental health examination of Mother under Tenn. R. Civ. P. 35.01 because it "would likely be much more intrusive to the Mother, may not determine all the significant mental health concerns of the Mother, and would require the mother's cooperation and verbal responses (which she would refuse)." Reviewing Mother's recent records would, he argues, "be quicker, more insightful and less of a burden on the Mother and Father," as well as less expensive. While, at least in Father's view, disclosure of Mother's records is the simplest and best way to resolve his evidentiary needs, Mother has the right not to waive her statutory privileges. Given this state of affairs, Father must decide whether he wants to seek a Rule 35.01 mental health examination of Mother. Rule 35.01 is applicable to any action in which the Rules of Civil Procedure apply. *Odom v. Odom*, No. M1999-02811-COA-R3-CV, 2001 WL 1543476, at \*5 (Tenn. Ct. App. Dec. 5, 2001). In order to invoke Rule 35.01, Father must establish that Mother's mental health is "in controversy," and that "good cause" exists for the examination. *Id.*

We reverse the trial court's order to produce the records at issue. Costs of appeal are assessed against the appellee, Daniel Herman.

_____
ANDY D. BENNETT, JUDGE