# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 24, 2012

## STATE OF TENNESSEE v. DARRICK EUGENE McALLISTER

**Direct Appeal from the Criminal Court for Knox County**
**No. 93998    Steve Sword, Judge**

---

**No. E2012-00493-CCA-R3-CD - Filed February 7, 2013**

---

The Knox County Criminal Court denied Defendant Darrick Eugene McAllister's motion to suppress all evidence seized in a warrantless search. Subsequently, Defendant entered a guilty plea, and according to the amended judgment in the record, Defendant pled guilty to possession with intent to sell less than 0.5 grams of cocaine, a Class C felony, and received a sentence of eight (8) years as a Range II multiple offender. The amended judgment and the negotiated plea agreement documents show that Defendant reserved a certified question of law for appeal. The transcript of the guilty plea hearing is not in the record. After a review of the record, we affirm the amended judgment of the trial court. We note, however, that the negotiated plea agreement documents reflect that Defendant was going to plead guilty to the Class C felony offense of attempted possession of more than 0.5 grams of cocaine within 1,000 feet of a drug free zone (a park). However, we did not have jurisdiction in this case to do anything but affirm the amended judgment (which we do) or reverse the amended judgment and dismiss the charges. The trial court, however, may review the entire record and take appropriate measures, if any, to correct the amended judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J. and D. KELLY THOMAS, JR., J., joined.

Thomas G. Slaughter, Knoxville, Tennessee, for the appellant, Darrick Eugene McAllister.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the January 13, 2012 suppression hearing, Knoxville Police Department officer Philip Jinks testified that on August 19, 2009, at approximately 6:00 p.m., he and other officers executed a search warrant at 1100 University Avenue. The residence was divided into two separate apartments on two levels. An exterior staircase led to a porch on the second floor apartment. The warrant was for a search of the downstairs apartment only and was "based on a series of controlled buys of crack cocaine from the downstairs apartment." During a surveillance one day prior to the execution of the search warrant, Officer Jinks observed "a large stature black male . . . wearing a blue [t]-shirt, sitting and standing on [the] front porch of the upstairs apartment." Officer Jinks testified, "[t]here was a lot of activity" and people going back and forth between the two apartments and having "[v]ery brief" conversations with the man on the front porch of the upstairs apartment.

Officer Jinks testified that his role in the execution of the search warrant "was to go up those stairs to the upstairs apartment and secure the front porch to prevent any attack or any assault on the officers who were executing the search warrant at the downstairs apartment." As Officer Jinks walked up the stairs, he observed Defendant sitting in a chair on the front porch. Defendant stood up, and with his weapon drawn, Officer Jinks ordered him not to move. Officer Jinks approached Defendant and saw that he was barefoot. Officer Jinks saw a pair of men's tennis shoes "within a couple feet of the defendant." Officer Jinks testified that the shoes "were sitting on the porch next to the defendant, and in plain view in one of those tennis shoes, [he] observed a bag of crack cocaine and a quantity of U.S. currency . . . . I just saw rolled up money, and a [b]aggie of crack." Officer Jinks testified that Defendant was wearing a blue t-shirt and "appeared to be similar to the individual [he] had seen the day before sitting in the same location also in a same colored blue [t]-shirt." Officer Jinks "immediately took the defendant into custody." Officer Jinks handcuffed Defendant and took him to a patrol car. Officer Jinks testified that while he was performing a search incident to arrest, "without being asked, the defendant said, 'What you found in my shoe was all that I had.'"

On cross-examination, Officer Jinks testified that he could not be sure that Defendant was the same person he had seen on the porch the previous day. He also testified that no undercover officers had purchased any drugs from Defendant. Officer Jinks testified that there was nothing in the investigation that "rose to the level of probable cause" necessary to obtain a search warrant for the upstairs apartment. He testified that during one of the controlled buys, "one of the individuals involved in the sale[ ] downstairs, made a comment that they had to go upstairs to get it, and they left the apartment, went up the stairs, and then came back down the stairs."

In a written order denying Defendant's motion to suppress, the trial court found as follows:

The defense argues that the officer drawing his weapon and ordering the defendant not to move places the defendant under seizure. That very well may be the case. However, this does not remove the fact that the officer was legally on the front porch when he made the observation of the contraband to begin with. The discovery of the contraband was in no way connected to the seizure. Therefore, it cannot be considered fruit of the poisonous tree, assuming the seizure is invalid.

Furthermore, the court is of the opinion that the officer was further justified in ascending the stairs to the second floor porch in order to secure the premises for the safe administration of the search warrant. This was the high ground. It is reasonable and necessary for the officer to secure this area before officers enter below. The officer had evidence that individuals in the second floor apartment were engaged in criminal behavior in conjunction with individuals on the first floor. Officer Jinks could observe someone at the time of serving the warrant seated on the second floor porch. This person matched the description of someone seen engaging in the described conduct the day before. It was reasonable for the officer to believe that this person may have been in pursuit of criminal enterprise with those below, and may, therefore, come to their aid. Thus, exigent circumstances existed for the officer to walk up to the porch and secure this individual to protect the officers below.

The defense also questions the officer's ability to recognize the contraband by plain sight. However, the picture of the contraband reveals what clearly appears through the clear plastic to be a crack cocaine-like substance packaged in the way crack cocaine is normally packaged for sale. The officer's testimony that based upon his trained eye, the [substance] was clearly crack cocaine is credible.

An amended judgment entered by the trial court contains the following statement of the certified question being reserved on appeal:

THE DEFENDANT SPECIFICALLY RESERVES THE RIGHT TO APPEAL THE TRIAL COURT'S DENIAL OF HIS MOTION TO SUPPRESS AS PART OF HIS PLEA AGREEMENT IN THIS CASE. THE SPECIFIC LEGAL ISSUE IS WHETHER THERE WAS A

-3-

LAWFUL SEIZURE OF THE DEFENDANT LOCATED ON AN OPEN PORCH BY AUTHORITIES DURING THE EXECUTION OF A SEARCH WARRANT OF AN APARTMENT BELOW WHERE THE DEFENDANT WAS SEIZED, AND WHETHER COCAINE FOUND IN A SNEAKER NEAR WHERE THE DEFENDANT WAS FOUND IS FRUIT OF THE POISONOUS TREE. ALSO AT ISSUE IS WHETHER OR NOT THE DRUGS SEIZED WERE IN PLAIN VIEW PRIOR TO THE DRUGS SEIZURE. SUPPRESSION, IF GRANTED, WOULD BE DISPOSITIVE OF THE CASE AS THERE WAS NO OTHER PROOF OF DRUG ACTIVITY INVOLVING THE DEFENDANT. BOTH THE TRIAL COURT AND THE STATE AGREE AS TO THE DISPOSITIVE NATURE OF THIS ISSUE. BOTH THE TRIAL COURT AND THE STATE AGREE THE DEFENDANT SPECIFICALLY RESERVES HIS RIGHT TO APPEAL THIS ISSUE AS PART OF HIS PLEA AGREEMENT AND BOTH CONSENT TO THE RESERVATION OF THIS ISSUE BY THE DEFENDANT.

This statement clearly identifies "the scope and limits of the legal issue reserved." Tenn. R. Crim. P. 37(b)(2)(A)(ii). The judgment also reflects the express consent of the trial judge and the State to the question and all parties' opinion that the question is dispositive of the case. *Id*. at (b)(2)(A)(iii), (iv). We conclude that the certified question of law in this case is dispositive and is properly before this court. *See State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988).

On appeal, Defendant asserts that he was illegally seized and therefore, the cocaine found in his shoe was "fruit of the poisonous tree" and should have been suppressed. The State responds that Officer Jinks was lawfully on the front porch of the upstairs apartment when he observed the cocaine in plain view.

We review this certified question under the same standard as an appeal from a judgment denying a motion to suppress, although this case comes to us on appeal as a certified question of law under Tenn. R. Crim. P. 37(b)(2). *See State v. Nicholson*, 188 S.W.3d 649, 656 (Tenn. 2006). A trial court's findings of fact at a hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). As the trier of fact, the trial court is in a better position to assess the witnesses' credibility, determine the weight of the evidence and the value to be afforded it, and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). However, the trial court's conclusions of law are not binding on this court. *State v. Randolph*, 74 S.W.3d 330, 333

(Tenn. 2002). Further, the trial court's applications of law to the facts are questions of law that we review de novo. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000).

At a hearing on a motion to suppress evidence recovered as a result of a warrantless search, the State must prove that the search was reasonable. *State v. Coulter*, 67 S.W.3d 3, 41 (Tenn. Crim. App. 2001). To carry its burden, the State must prove that law enforcement conducted the warrantless search or seizure pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). On appeal, the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn therefrom. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The defendant bears the burden of establishing that the evidence contained in the record preponderates against the trial court's findings of fact. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

Under both the federal constitution and our state constitution, a search without a warrant is presumptively unreasonable, and any evidence obtained pursuant to such a search is subject to suppression unless the state demonstrates that the search was conducted under one of the narrowly defined exceptions to the warrant requirement. *See Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). Courts have recognized exceptions to the general requirement of the issuance of a warrant prior to conducting a search. Among the commonly recognized exceptions to the requirement of a warrant are: (1) a search incident to an arrest, (2) the plain view doctrine, (3) a consent to the search, (4) a *Terry* stop and frisk, and (5) the existence of exigent circumstances. *State v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007); *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005).

The trial court held that "exigent circumstances existed for the officer to walk up to the porch and secure this individual to protect the officers below." We disagree. Exigent circumstances arise where "the needs of law enforcement [are] so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978)). "'Exigent circumstances are limited to three situations: (1) when officers are in 'hot pursuit' of a fleeing suspect; (2) when the suspect presents an immediate threat to the arresting officers or the public; or (3) when immediate police action is necessary to prevent the destruction of vital evidence or thwart the escape of known criminals.'" *State v. Adams*, 238 S .W.3d 313, 321 (Tenn. Crim. App. 2005) (quoting *State v. Givens*, No. M2001–00021–CCA–R3–CD, 2001 WL 1517033, at *3 (Tenn. Crim. App. Nov. 29, 2001), *perm. app. denied* (Tenn. May 6, 2002)). The mere existence of one of these circumstances does not, in and of itself,

validate a warrantless search; the State must also show that "the exigencies of the situation made the search imperative." *State v. Yeargan*, 958 S.W.2d 626, 635 (Tenn. 1997).

In the present case, none of the urgent situations stated above were present to justify a warrantless search of Defendant. Officer Jinks testified that he went up the exterior stairs in order to secure the open porch area of the second floor apartment to ensure the safety of the officers executing the search warrant of the apartment below. Officer Jinks observed Defendant sitting on the porch. Defendant stood up as Officer Jinks approached the porch. Defendant did not display any firearm or other weapon. Officer Jinks had no reason to believe that Defendant was about to destroy evidence. Nevertheless, the officers did not enter Defendant's apartment or search Defendant's person.

Rather, in attempting to secure the area around the apartment to be searched, Officer Jinks encountered Defendant, and he seized Defendant when he ordered him at gunpoint not to move. We agree with the trial court's conclusion that officers, under the specific facts of this case, were reasonable in securing the porch area of the upstairs apartment while the search warrant was executed for the downstairs apartment. The trial court was also correct in finding that Defendant did not have a reasonable expectation of privacy on the front porch. Our supreme court has held, "A person does not have an expectation of privacy in the area in front of his or her residence leading from the public way to the front door." *State v. Carter*, 160 S.W.3d 526, 533 (Tenn. 2005) (citing *State v. Cothran*, 115 S.W.3d 513, 522 (Tenn. Crim. App. 2003).

At a minimum, an officer's seizure of a citizen requires the officer to have "a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been, or is about to be, committed." *State v. Moore*, 775 S.W.2d 372, 377 (Tenn. Crim. App. 1989) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1879-80, 20 L. Ed. 2d 889 (1968)). In determining whether an officer's reasonable suspicion is supported by specific and articulable facts, "a court should consider the totality of the circumstances - the entire picture." *Moore*, 775 S.W.2d at 377 (citations omitted). In this case, officers had knowledge that drug activity had occurred in the downstairs apartment and that there had been communication between occupants in the downstairs apartment and a person similar in appearance to Defendant in the upstairs apartment, which suggested that Defendant may have been involved in a drug transaction the day before the search warrant for the downstairs apartment was executed.

During officers' surveillance of the downstairs apartment during the controlled buys prior to the issuance of the search warrant, Officer Jinks saw individuals go from the downstairs apartment to the upstairs porch and have a brief conversation with a man who resembled Defendant, and then go back to the downstairs apartment where the drug sale

occurred. During one of the controlled buys, one of the individuals involved in selling the drugs said that he had to go upstairs to "get it." Officer Jinks saw a person go upstairs, stay a few moments, and go downstairs again. This information warranted, in the least, a brief detention based on reasonable suspicion of drug activity. *See State v. Curtis*, 964 S.W.2d 604, 614 (Tenn. Crim. App. 1997) (holding that officers had reasonable and articulable facts to detain defendant who arrived at place being searched for drugs based on prior information linking defendant to drug involvement).

Under the specific facts of this case, officers had the right to walk up to the upstairs porch on legitimate police business to secure by their presence the upstairs porch from being a vantage point to do harm to other officers executing a search warrant downstairs. Also under the specific facts of this case, when Officer Jinks arrived, he had reasonable suspicion to *briefly* detain Defendant to investigate if he was *at that time* involved in criminal activity or was an immediate danger to officers executing the search warrant.

In this case, the seizure of Defendant did not result in Officer Jinks' discovery of the drugs. Rather, almost simultaneous to Officer Jinks' detention of Defendant, he observed in plain view what he believed to be crack cocaine packaged in a clear plastic bag in Defendant's shoe. For the plain view doctrine to apply, the following requirements must be met: "(1) the officer did not violate constitutional mandates in arriving at the location from which the evidence could plainly be seen; (2) the officer had a lawful right of access to the evidence; and (3) the incriminating character of the evidence was 'immediately apparent....'" *State v. Brock*, 327 S.W.3d 645, 684 (Tenn. Crim. App. 2009) (citations omitted).

The trial court credited Officer Jinks' testimony that the cocaine was visible and clearly recognizable by sight. The trial court ruled that the contraband was in plain view of the officer and was thus excepted from the warrant requirement. We agree with the trial court. Defendant was not entitled to suppression of the cocaine and money found in his shoe. The trial court did not err in denying Defendant's motion to suppress.

## CONCLUSION

The amended judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE